**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-01862-PAB

RESTAURANT LAW CENTER, NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, COLORADO RESTAURANT ASSOCIATION, HOME BUILDERS ASSOCIATION OF METROPOLITAN DENVER, AMERICAN HOTEL & LODGING ASSOCIATION, NATIONAL APARTMENT ASSOCIATION, and NATIONAL PROPANE GAS ASSOCIATION,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER**,**

    Defendant,

SIERRA CLUB

    Proposed Defendant-Intervenor.

---

**SIERRA CLUB'S MOTION TO INTERVENE AND FOR LEAVE TO FILE RULE 12(B) MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

EXHIBIT INDEX ............................................................................................................... 2
INTRODUCTION .............................................................................................................. 3
BACKGROUND ................................................................................................................ 4
    I.    DENVER'S BUILDING CODE STANDARDS............................................... 4
    II.    SIERRA CLUB'S SUPPORT FOR DENVER'S BUILDING CODE STANDARDS ...... 5
ARGUMENT ...................................................................................................................... 6
    I.    SIERRA CLUB IS ENTITLED TO INTERVENE AS OF RIGHT.................................. 6
        A.    The Motion to Intervene is timely. ................................................................... 7
        B.    Sierra Club has an interest in the subject matter of this litigation. .................. 7
            1.    Sierra Club was directly involved in the development and enactment of Denver's building code standards........................................................................ 8
            2.    Sierra Club's interests in protecting the environment and reducing air pollution are advanced by the building code standards.............................. 9
        C.    Sierra Club's interests may be impaired as a result of this litigation. ........................... 11
        D.    Sierra Club's interests are not adequately represented by Denver. .............................. 12
    II.    ALTERNATIVELY, THIS COURT SHOULD GRANT SIERRA CLUB PERMISSIVE INTERVENTION. .................................................................................................... 14
CONCLUSION.............................................................................................................. 15

**EXHIBIT INDEX**

| | |
|---|---|
| Exhibit 1 | Declaration of Sarah Tresedder |
| Exhibit 2 | Declaration of Rebecca Menke |
| Exhibit 3 | Declaration of Victoria Hernandez |
| Exhibit 4 | Denver Climate Action Task Force, *Denver Climate Action 2020 Recommendations Report* (2020) |
| Exhibit 5 | Energize Denver Task Force, *Energize Denver Task Force Recommendations* (2021) |
| Exhibit 6 | City & Cnty. of Denver, Council B. 21-1310 |
| Exhibit 7 | City & Cnty. of Denver, Council B. 22-1653 |

## INTRODUCTION

The City and County of Denver is a regional and national leader in climate action. Through a landmark 2021 ordinance, Denver codified building code standards designed to squarely address the city's largest source of greenhouse gas emissions—buildings. That same ordinance set in motion a process for developing further building code standards that would build on the 2021 standards. However, the seven plaintiffs in this case representing various industries (hereinafter the "Industry Groups") claim the federal Energy Policy and Conservation Act (EPCA) preempts Denver's building code standards for commercial and multi-family buildings. Compl. ¶¶ 78–85 (Docket No. 1).

Sierra Club moves to intervene to uphold and defend Denver's building code standards. Sierra Club has worked for years to develop and enact the challenged building code standards, and these standards provide important environmental, air quality, and other benefits to Sierra Club and its members. As described below, Sierra Club meets all the requirements to intervene of right in this case under Federal Rule of Civil Procedure 24(a). Alternatively, Sierra Club moves for permissive intervention under Federal Rule of Civil Procedure 24(b).

In addition, Sierra Club concurrently files a Rule 12(b) Motion to Dismiss the Complaint, as the accompanying filing setting out Sierra Club's defenses. Sierra Club requests that if its intervention is granted, the Court also accept its Motion to Dismiss.

Counsel for Sierra Club conferred with counsel for all parties in accordance with D.C.COLO.LCivR 7.1(a). The Plaintiffs oppose Sierra Club's Motion to Intervene. Denver currently opposes Sierra Club's Motion to Intervene and has provided the following conferral statement: "Denver opposes Sierra Club's Motion to Intervene because the parties are currently

engaged in productive settlement discussions. If those negotiations do not succeed, Denver would likely change its position regarding Sierra Club's position at that time."

## BACKGROUND

### I. Denver's Building Code Standards

Denver's building code standards represent several years of collaboration among stakeholders in the private and public sectors. In 2020, Denver convened a Climate Action Task Force to make recommendations regarding the City's efforts to address climate change. Employing a broad suite of actions, the Climate Action Task Force issued a report that recommended a building performance standard that requires large buildings to reduce their greenhouse gas emissions over time.[1] To formulate this standard, Denver subsequently formed the Energize Denver Task Force.[2] In 2021, the Energize Denver Task Force recommended building code standards that encourage decarbonization through electrification of existing commercial and multi-family buildings, and the Denver City Council unanimously passed the Energize Denver Task Force's recommendations. City & Cnty. of Denver, Council B. 21-1310, attached as Ex. 6. The overarching goal of the Energize Denver program is to reduce the emissions from buildings that contribute to climate change and health-harming pollution. Denver consciously set out to provide building owners with flexibility to select the measures that are most appropriate for their buildings that reduce emissions. *Id.*

---

[1] Denver Climate Action Task Force, *Denver Climate Action 2020 Recommendations Report* at v, 15–25 (2020), attached as Ex. 4.
[2] Energize Denver Task Force, *Energize Denver Task Force Recommendations* 1–2 (2021), attached as Ex. 5.

4

In addition, Denver updated its Energy Code to include building code standards for commercial and multi-family buildings. To develop these building code standards, Denver formed working groups that proposed amendments to the Energy Code. In 2022, Denver held formal code committee hearings that allowed public feedback on the proposed amendments. Sarah Tresedder Decl. ¶ 7, attached as Ex. 1. The Denver City Council unanimously adopted the 2022 Energy Code with the building code standards for commercial and multi-family buildings. City & Cnty. of Denver, Council B. 22-1653, attached as Ex. 7.

Denver implemented some of the provisions in the ordinances by adopting them into the 2022 Energy Code; these building code standards provide requirements for new and existing buildings. Denver, Colo., Energy Code §§ C403.2.4, C404.10, C503.3.3, C503.4.1 (2022). The 2021 ordinance also directs Denver to phase in additional building code standards for existing buildings by 2025 and 2027, but Denver has not taken any action to do so. City & Cnty. of Denver, Council B. 21-1310 § 3. The building code standards do not apply wholesale to all buildings in Denver, and where the standards require consideration or adoption of electric equipment for certain use cases, they provide numerous flexibilities and exemptions. As one example, the building code standards include an economic hardship exemption for existing buildings if the cost of an electric heat pump system is more than fifteen percent greater than the cost of an equivalent gas system. Denver, Colo., Rev. Mun. Code ch. 10, art. II, § 10-20(d)(8).

## II. Sierra Club's support for Denver's Building Code Standards

Sierra Club is a grassroots environmental organization with 18,928 members in Colorado. Tresedder Decl. ¶ 2. These members include people harmed by air pollution and building decarbonization policy advocates. *Id.* at ¶ 9. Sierra Club's mission is to enjoy, explore, and

5

protect the wild places of the Earth; to practice and promote the responsible use of the Earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environment. *Id.* at ¶ 2. One of Sierra Club's strategic objectives focuses on a clean and just energy transition, including the reduction of greenhouse gas emissions from fossil fuels used in buildings and the energy sector. *Id.* at ¶ 3.

Sierra Club and its members have worked for years to develop and enact the Energize Denver program and the challenged building code provisions. Sierra Club representatives served on Denver's 2020 Climate Action Task Force and the 2021 Energize Denver Task Force. Tresedder Decl. ¶ 7. Both task forces provided recommendations for the city's building performance policy, and the recommendations led to the building code standards. *Id*. Additionally, a Sierra Club representative testified before the Denver City Council in support of the Energize Denver ordinance. *Id*. A Sierra Club representative also participated in the 2022 Energy Code committee hearings and supported the additional building code provisions. *Id*.

### ARGUMENT

**I.      Sierra Club is entitled to intervene as of right.**

A movant is entitled to intervene as of right under Rule 24(a) if (1) the motion to intervene is timely, (2) the applicant has an interest relating to the property or transaction that is the subject of the litigation, (3) the applicant's interest may as a practical matter be impaired or impeded by the litigation, and (4) the applicant's interest may not be adequately represented by the parties before the court. *See, e.g., Kane Cnty. v. U.S., (Kane 2024)*, 94 F.4th 1017, 1029–30 (10th Cir. 2024). The Tenth Circuit follows "a liberal approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir.

2017) (internal quotations omitted). Sierra Club satisfies each of the Rule 24(a) requirements and is entitled to intervene in this case as of right.

Additionally, the District Court of Colorado granted Sierra Club intervention as of right in a similar case.[3] In *Colorado Apartment Association*, the plaintiffs allege that EPCA preempts building performance standards enacted by Denver and the State of Colorado and seek to enjoin enforcement of those standards. Under those similar facts and legal claims, the Court concluded that Sierra Club satisfied each of the Rule 24(a) requirements.

### A. The Motion to Intervene is timely.

Rule 24(a)'s "timeliness" requirement focuses on any prejudice to existing parties resulting from the passage of time between the initiation of the litigation and the motion to intervene. *See, e.g., Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250–51 (10th Cir. 2001).

Here, Plaintiffs filed the Complaint on July 3, 2024. The initial scheduling conference has not yet occurred, and the Court has not issued any substantive orders or rulings. Sierra Club's intervention at this early stage would not prejudice any existing party and it is clearly timely. *Cf. id.* (intervention motion filed three years after complaint was timely when other parties not significantly prejudiced).

### B. Sierra Club has an interest in the subject matter of this litigation.

The second requirement of Rule 24(a) is that an intervenor has an interest related to the property or transaction in dispute. *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). There is no "rigid formula" or "mechanical rule" for determining whether an

---

[3] *Colo. Apartment Ass'n v. Ryan*, Case No. 1:24-cv-01093-RMR, Docket No. 50 (D. Colo. Aug. 19, 2024).

7

interest is sufficient to justify intervention. *San Juan Cnty. v. U.S.*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc). Instead, courts must apply "practical judgment" to determine "whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.*; *see also Kane Cnty. v. U.S.,* (*Kane 2019*), 928 F.3d 877, 891 (10th Cir. 2019). It is "indisputable" that an applicant's environmental concern is an interest sufficient to meet this standard. *Kane 2024*, 94 F.4th at 1030 (citing *Nat'l Park Serv.*, 604 F.3d at 1198).[4] Sierra Club has at least two interests in the challenged building code standards that meet the test for intervention as of right.

### 1. Sierra Club was directly involved in the development and enactment of Denver's building code standards.

Sierra Club has an interest in this litigation because it worked extensively to develop and enact the challenged building code standards. *See supra* at 4–6. Courts have recognized that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Zinke*, 877 F.3d at 1165–66 (holding that a conservation group's "record of advocacy" for environmental protections being challenged satisfied the interest requirement).

Sierra Club participated extensively in the development and enactment of Denver's building code standards. *See supra* at 4–6. Sierra Club made direct contributions to the development of the building code standards and advocated for their approval before the Denver

---

[4] An intervenor does not need to independently establish Article III standing if it seeks the same relief as an existing party. *Kane 2019*, 928 F.3d at 886–87 (citing *San Juan Cnty.*, 503 F.3d at 1172). An applicant seeking to intervene to defend a challenged law seeks the same relief as the government defendant: "namely, the upholding of the law." *Id.* at 887 n.12 (citing *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018)). Thus, Sierra Club need not establish its independent standing because it seeks the same relief as Denver. Nevertheless, as this Motion and the declarations included as exhibits demonstrate, Sierra Club satisfies the Article III standing requirements. *See id.* at 888–89.

City Council. *Id.* Given its efforts on behalf of the building code standards, Sierra Club has a sufficient interest in this litigation to intervene as of right.

### 2. Sierra Club's interests in protecting the environment and reducing air pollution are advanced by the building code standards.

Denver's building code standards benefit Sierra Club through their role in protecting the environment, reducing air pollution, and addressing climate change. In addition to reducing Denver's greenhouse gas emissions, the building code standards serve as a model for efforts elsewhere in the United States to address emissions from buildings.

Protecting the environment, reducing air pollution and combating climate change are integral to Sierra Club's mission. Sierra Club has advocated extensively for policies that reduce air pollution and greenhouse gas emissions in Colorado and other states. Tresedder Decl. ¶¶ 2–3. The role of Denver's building code standards in furthering this organizational priority provides a sufficient interest for intervention. *See, e.g., Kane 2024*, 94 F.4th at 1030; *Nat'l Park Serv.*, 604 F.3d at 1200–01; *Clinton*, 255 F.3d at 1252. Additionally, it is "'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest" for intervention purposes. *Nat'l Park Serv.*, 604 F.3d at 1198 (quoting *San Juan Cnty.*, 503 F.3d at 1199).

The building code standards advance Sierra Club's interests in protecting the environment, reducing air pollution, and addressing climate change in three ways. First, Sierra Club's members have an interest in the building code standards' role in reducing the meaningful contributions to climate change from buildings in Denver. Tresedder Decl. ¶¶ 2–3. Existing commercial and multi-family buildings are Denver's largest source of greenhouse gas emissions, and the building code standards are one part of Denver's overall strategy to reduce greenhouse gas emissions from buildings. *See Id.* at ¶¶ 4–7; City & Cnty. of Denver, Council B. 21-1310.

9

Second, the building code standards will help advance nationwide efforts to reduce emissions from buildings and address climate change. The Energize Denver program and the building code standards serve as a model for how cities can address greenhouse gas emissions from buildings. Tresedder Decl. ¶ 8–9. This broader influence bolsters Sierra Club's nationwide efforts to combat climate change.

Third, the building code standards directly affect Sierra Club's members. While the primary goal of the building code standards is to reduce emissions that contribute to climate change, the same processes that lead to greenhouse gas emissions also cause other emissions that directly harm human health. Buildings in Denver burn fossil fuels for, among other things, space and water heating. The combustion of fossil fuels emits several air pollutants, including nitrogen oxides and particulate matter, which cause direct health harms and contribute to formation of ground-level ozone, which is present at unhealthy levels along the Front Range. *Id.* at ¶¶ 3–4. Thus, the building code provisions at issue in this case will also provide important health benefits associated with improved air quality. *See id.*; City & Cnty. of Denver, Council B. 21-1310.

Air pollution associated with fossil fuel combustion harms the health of Sierra Club's members. These members have experienced health harms ranging from fatigue to headaches, and they fear far worse if Colorado's air quality is not improved. Rebecca Menke Decl. ¶ 9, attached as Ex. 2; Victoria Hernandez Decl. ¶¶ 8–11 attached as Ex. 3. Air pollution also harms Sierra Club members' aesthetic and recreational interests in their environment. Concerns about exposure to pollution have forced them to restrict their participation in the outdoor activities they love, including running, hiking, and exercise. Menke Decl. ¶¶ 7–10; Hernandez Decl. ¶¶ 7–8, 11. Air pollution also impairs visibility, harming members by obscuring natural scenery and creating

10

a literal dark cloud over the city they call home. Menke Decl. ¶ 11; Hernandez Decl. ¶¶ 9, 11. These environmental, health, aesthetic, and recreational interests of the Sierra Club and its members are sufficient for intervention in this case.

      **C.**     **Sierra Club's interests may be impaired as a result of this litigation.**

The third requirement under Rule 24(a) for intervention as of right is that the litigation "may, as a practical matter, impair or impede the movant's interest." *Nat'l Park Serv.*, 604 F.3d at 1198. Meeting this "impairment" requirement presents only a "minimal burden" to prospective intervenors. *Id.* at 1199. A movant for intervention "must show only that impairment of its substantial legal interest is possible if intervention is denied." *Id.* (emphases added).

Because the Industry Groups ask this Court to enjoin implementation of the building code standards and seek a declaratory judgement finding such provisions are void and unenforceable, this case undoubtedly threatens to impair the Sierra Club's interests. Compl. ¶¶ 87–88 (Docket No. 1). Litigation seeking to invalidate a statute clearly "may, as a practical matter, impair or impede the movant's interest" in the continued operation and validity of that statute. *See Nat'l Park Serv.*, 604 F.3d at 1198.

If the building code standards are struck down, Sierra Club and its members will lose the climate change, environmental, health, and recreational benefits described above. *See supra* at 9–11. The building code standards encourage building owners to consider and potentially install electric equipment, as part of an overall program to address greenhouse gas emissions from Denver's buildings. If the Industry Groups prevail, this overall program will be weakened, and it is very likely that electrification rates and the resulting environmental benefits will decline. Tresedder Decl. ¶ 9; Menke Decl. ¶¶ 7–15. This step backwards will likely impair the Sierra

11

Club's efforts to combat climate change. It will also adversely affect Sierra Club members' health and enjoyment of Colorado's natural beauty. This possibility of impairment is sufficient for intervention. *See e.g., Nat'l Park Serv.*, 604 F.3d at 1201; *Clinton*, 255 F.3d at 1253–54.

Moreover, if the building code standards are enjoined, Sierra Club's extensive efforts to pass and strengthen Denver's standards will be nullified. Tresedder Decl. ¶ 7. Sierra Club and its members would be forced to return to square one in developing and advocating for new standards. Courts have recognized that such a setback is sufficient for intervention. *Nat'l Park Serv.*, 604 F.3d at 1199.

### D. Sierra Club's interests are not adequately represented by Denver.

The final requirement of Rule 24(a) for intervention as of right is that the movant's interests may not be adequately represented by existing parties. This "inadequate representation" requirement also imposes a "minimal burden," particularly when parties seek to intervene in support of the government. *See, e.g., Kane 2024*, 94 F.4th at 1030 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *Nat'l Park Serv.*, 604 F.3d at 1200. A prospective intervenor "must show only the possibility that representation may be inadequate." *Nat'l Park Serv.*, 604 F.3d at 1200. The fact that an applicant seeks the same form of relief as an existing party does not render their interests identical. *Kane 2024*, 94 F.4th at 1032 (citing *Kane 2019*, 928 F.3d at 887 n.13).

In most circumstances "the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Clinton*, 255 F.3d at 1256. As a result, the Tenth Circuit "ha[s] repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's

interests and the private interests of a prospective intervenor." *Nat'l Park Serv.*, 604 F.3d at 1200 (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002)). "The burden of showing inadequacy of representation is satisfied," according to the court, "[w]here a government agency may be placed in the position of defending both public and private interests." *Id.*

Denver cannot adequately represent the interests of Sierra Club. Sierra Club is focused on advancing the many environmental and public health benefits of the building code standards. *See supra* at 9–11. By contrast, Denver represents a broad spectrum of views—including private economic and business interests—that may differ substantially from those of Sierra Club. For example, the Energize Denver Task Force included representatives of building owners and managers, utilities, and oil and gas interests. Energize Denver Task Force, *Energize Denver Task Force Recommendations* 1–2. When defending its building code standards, Denver will inevitably and understandably balance those diverse interests differently than Sierra Club. It is foreseeable that Denver's strategic litigation decisions may place a lower priority than Sierra Club will on Denver's environmental goals than on its other economic or business interests.

Moreover, Sierra Club's interests in this case extend far beyond the boundaries of the City and County of Denver, while Denver's interests are geographically limited. Sierra Club has an interest not just in defending Denver's building code standards, but also in the precedential effect this challenge may have on the continued validity of similar building code standards across the nation. *See* Tresedder Decl. ¶ 8–9; *see also Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) ("[T]he *stare decisis* effect

of the district court's judgment is sufficient impairment for intervention…"). Denver does not share these nationwide concerns.

In short, the Court cannot assume that Denver's approach to defending the building code standards will adequately represent Sierra Club "merely because both entities occupy the same posture in the litigation." *Clinton*, 255 F.3d at 1256. Denver represents a much broader range of interests, and it is "on its face impossible" for Denver to adequately represent Sierra Club. Thus, Sierra Club has met the "minimal burden" of the "inadequate representation" requirement. *See Nat'l Park Serv.*, 604 F.3d at 1200.

## II.      Alternatively, this Court should grant Sierra Club permissive intervention.

In addition to qualifying for intervention as of right, Sierra Club satisfies the requirements for permissive intervention under Rule 24(b). Permissive intervention is appropriate where an applicant demonstrates: (1) it has a claim or defense that shares a common question of law or fact with the main action; (2) the intervention will not cause undue delay or prejudice; and (3) the motion to intervene is timely. Fed. R. Civ. P. 24(b).

Here, Sierra Club intends to assert claims and defenses in common with those at the center of this action: the question of whether the EPCA preempts the building standards. In addition, Sierra Club plans to raise several additional defenses challenging the Industry Groups' ability to bring this case. *See* Mot. Dismiss; *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002) (conservation groups met test for permissive intervention where they asserted defenses "directly responsive" to plaintiffs' complaint).

Moreover, this Motion to Intervene is timely and allowing Sierra Club to intervene in this case will not cause undue delay or prejudice to the existing parties. *See supra* at 7. To the

contrary, Sierra Club may assist the Court in resolving this case by providing additional perspective on the environmental, air, health, and climate benefits of the building code standards, as well as the legal issues related to EPCA preemption. *See Utahns*, 295 F.3d at 1116 (recognizing that "experience with" and "contribut[ions] to" agency actions challenged in litigation as supporting intervention); *accord Clinton*, 255 F.3d at 1255. Accordingly, even if the Court does not grant intervention as of right, permissive intervention is warranted here.

## CONCLUSION

For the foregoing reasons, the Court should grant Sierra Club's intervention as a matter of right under Rule 24(a). Alternatively, permissive intervention should be allowed under Rule 24(b). In addition, Sierra Club requests that if the Court grants this Motion to Intervene, the Court also accept Sierra Club's attached Motion to Dismiss pursuant to Rule12(b)(6).

Dated September 5, 2024.

| | |
|---|---|
| /s/ Michael A. Hiatt<br>Michael A. Hiatt<br>Robert Rigonan<br>Earthjustice<br>633 17th Street, Suite 1600<br>Denver, CO 80202<br>(303) 623-9466<br>mhiatt@earthjustice.org<br>rrigonan@earthjustice.org | Matthew Gerhart<br>Sierra Club<br>1536 Wynkoop St., Suite 200<br>Denver, CO 80202<br>(303) 454-3346<br>matt.gerhart@sierraclub.org<br><br>Jim Dennison<br>Sierra Club<br>1650 38th St. Suite 103W<br>Boulder, CO 80301<br>(435) 232-5784<br>jim.dennison@sierraclub.org |

*Attorneys for Proposed Defendant-Intervenor Sierra Club*

# CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024, I caused a true and correct copy of the foregoing **MOTION TO INTERVENE AND FOR LEAVE TO FILE RULE 12(B) MOTION TO DISMISS** to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

| | |
|---|---|
| Ronald Scott Novak, Jr. | Michele Annette Horn |
| Megan H. Berge | Denver City Attorney's Office |
| Baker Botts LLP | 201 West Colfax Avenue |
| 700 K Street NW | Denver, CO  80202-5332 |
| Washington, DC 20001 | (720) 913-3260 |
| (202) 639-7786 | michele.horn@denvergov.org |
| scott.novak@bakerbotts.com | |
| megan.berge@bakerbotts.com | *Attorney for Defendant* |

*Attorneys for Plaintiffs*

Angelo Amador
2055 L St NW
Washington, DC 20036
(202) 331-5913
AAmador@restaurant.org

*Attorney for Plaintiff Restaurant Law Center*

                                                                          /s/ Diana Ramirez
                                                                          Diana Ramirez
                                                                          Senior Litigation Assistant
                                                                          Earthjustice
                                                                          633 17th Street, Suite 1600
                                                                          Denver, CO 80202
                                                                          dramirez@earthjustice.org