IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01862-PAB

RESTAURANT LAW CENTER, NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, COLORADO RESTAURANT ASSOCIATION, HOME BUILDERS ASSOCIATION OF METROPOLITAN DENVER, AMERICAN HOTEL & LODGING ASSOCIATION, NATIONAL APARTMENT ASSOCIATION, and NATIONAL PROPANE GAS ASSOCIATION,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER,

    Defendant,

SIERRA CLUB,

    Proposed Defendant-Intervenor.

---

**PROPOSED MOTION TO DISMISS
BY APPLICANT FOR INTERVENTION SIERRA CLUB**

---

Applicant for intervention Sierra Club submits this proposed Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Sierra Club has concurrently filed a Motion to Intervene, and Federal Rule of Civil Procedure 24(c) requires such a motion "be accompanied by a pleading that sets out the . . . defense for which intervention is sought." This Motion to Dismiss is the accompanying filing setting out Sierra Club's defenses. If the Court grants its intervention motion, Sierra Club requests the Court accept this Motion to Dismiss.

1

## SUMMARY OF ARGUMENT

Burning gas in buildings for space heating, water heating, and other uses is a significant source of greenhouse gas emissions and air pollution in Denver. To address this pollution, the City and County of Denver has enacted policies to decarbonize the buildings sector. At issue in this case are building code standards designed to advance partial electrification of space and water heating in commercial and multi-family buildings. These standards encourage and instruct building owners to replace certain types of gas-fired space and water heating equipment with heat pumps and other electric equipment, with multiple exemptions and exceptions. The standards will reduce greenhouse gas emissions and improve air quality.

The seven plaintiffs in this case representing various industries (hereinafter the "Industry Groups") filed a Complaint with one cause of action, which claims the federal Energy Policy and Conservation Act (EPCA) preempts these Denver building code standards for commercial and multi-family buildings. Compl. ¶¶ 78–85 (Docket No. 1). In this single cause of action, the Industry Groups facially challenge Denver's current building code standards and future standards that Denver intends to subsequently codify by 2025 and 2027. *Id.* at ¶¶ 79, 87–88 (referencing Revised Municipal Code § 10-20 and §§ C403.2.4 and C404.10 of the 2022 Denver Energy Code); *see also id.* at ¶¶ 1, 18–35.

This case challenging Denver's authority to implement building code standards should not proceed to the merits for two reasons. First, the Industry Groups' claim challenging Denver's future 2025 and 2027 standards is not ripe for judicial review. Unless and until Denver takes additional actions in the future to add the 2025 and 2027 standards to the Energy Code, those standards are not final and have no effect on the Industry Groups' members. Further, the Industry

Groups will not face hardship if the Court withholds its review of the 2025 and 2027 standards, as the standards do not require the Industry Groups' members to take any actions or incur any costs now or in anticipation of the standards' subsequent implementation.

Second, the Industry Groups' challenge to Denver's current building code standards is time barred because the plaintiffs did not file the Complaint within the applicable statute of limitations. EPCA does not contain an express limitations period for lawsuits alleging that EPCA preempts a state or local action. But EPCA does contain a sixty-day limitations period for similar causes of action. The Court should "borrow" EPCA's closely analogous statute of limitations for this EPCA claim, rather than "borrow" the two-year, catch-all limitations period in state law that applies more generally to any type of claim against a governmental entity. The Industry Groups' claim is time barred under EPCA's sixty-day statute of limitations because they filed the Complaint over 540 days after Denver's action adding the standards to its Energy Code.

Finally, if the Court disagrees with Sierra Club's ripeness argument regarding the future 2025 and 2027 standards, the Court must nonetheless dismiss the Industry Groups' claim challenging those standards as time barred. To the extent that Denver has approved the 2025 and 2027 standards, it did so when it enacted Ordinance No. 21-1310 in 2021. Thus, if the claim challenging the 2025 and 2027 standards is ripe, the claim is similarly time barred by EPCA's sixty-day statute of limitations.

Because the Industry Groups' Complaint consists of both unripe and time barred claims, the Court should grant this Motion to Dismiss and dismiss the Complaint in its entirety.[1]

---

[1] A party filing a motion to dismiss under Rule 12 is not required to confer with other parties prior to filing the motion, and amending the Complaint in this case would not cure the ripeness and statute of limitations issues that require dismissal. D.C.COLO.LCivR 7.1(b)(2).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a claim for relief when a complaint fails "to state a claim upon which relief can be granted." Under Rule 12(b)(6), a court may dismiss a claim that is not prudentially ripe for review, and plaintiffs bear the burden of establishing a claim is ripe. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229–30 (10th Cir. 2021). In addition, a court may dismiss a claim barred by a statute of limitations under Rule 12(b)(6) when the relevant dates in the complaint are undisputed and show the claim is time barred. *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). When ruling on a motion to dismiss, a court must construe the complaint in favor of the plaintiffs and accept all material facts in the complaint as true. *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248 (10th Cir. 2023).

## ARGUMENT

**I.   The Industry Groups' claim challenging Denver's future 2025 and 2027 building code standards is not ripe for judicial review.**

The Industry Groups' Complaint challenges future 2025 and 2027 building code standards for existing commercial and multi-family buildings. Specifically, the Complaint discusses Revised Municipal Code § 10-20(d), which contains standards to be incorporated in the Denver Energy Code by January 1, 2025. Compl. ¶¶ 11, 25–27 (Docket No. 1). Similarly, the Complaint discusses Revised Municipal Code § 10-20(e), which includes additional elements that are to be incorporated in the Energy Code by January 1, 2027. Compl. ¶¶ 20, 28–29 (Docket No. 1). However, the claim challenging these future 2025 and 2027 standards is not ripe for review, as these standards are not currently final and will only become so if Denver takes future actions to add the standards to its Energy Code. Accordingly, the Court should dismiss the

Complaint's challenge to the 2025 and 2027 building code standards in Municipal Code § 10-20(d) and (e), pursuant to Rule 12(b)(6). *See* Compl. ¶¶ 79,87–88 (Docket No. 1).

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003)). The prudential ripeness doctrine's "central focus" is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006)); *see also N. Mill St.*, 6 F.4th at 1229–30 (claim not prudentially ripe when a city did not make a final decision on a development proposal). When a court determines whether a case is ripe, it "examine[s] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Palma*, 707 F.3d at 1158 (internal quotation marks omitted) (quoting *Ohio Forestry Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

A. **Fitness for review**

When determining whether a claim is fit for judicial review, courts consider factors such as "whether the issue is a purely legal one, whether the agency decision in dispute was final, and whether further factual development would significantly advance [the] ability to deal with the legal issues presented." *Wyoming*, 871 F.3d at 1141 (internal quotation marks omitted) (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 812). The Industry Groups' claim is not fit for judicial

5

review because the 2025 and 2027 standards contained in Revised Municipal Code § 10-20(d) and (e) are not Denver's final action on these standards.

The 2025 and 2027 standards in Revised Municipal Code § 10-20(d) and (e) do not represent the consummation of Denver's decision-making process. The standards will not go into effect unless and until Denver subsequently adds the standards to its Energy Code (which is a component of the Denver Building and Fire Code). The text of the challenged code provisions expressly acknowledges this. Revised Municipal Code § 10-20(d) states: "No later than January 1, 2025, the Denver Building and Fire Code <u>shall be amended to implement</u> the following electrification requirements . . . ." Denver, Colo., Rev. Mun. Code ch. 10, art. II, § 10-20(d) (2024) (emphasis added).[2] Revised Municipal Code § 10-20(e) contains similar language: "No later than January 1, 2027, the Denver Building and Fire Code <u>shall be amended to implement</u> the following electrification requirements . . . ." *Id.* § 10-20(e) (emphasis added). Because these two code provisions expressly state that Denver must take additional actions in the future to implement the 2025 and 2027 standards, Municipal Code § 10-20(d) and (e) are not the end of Denver's decision-making process regarding these standards. In the future, Denver could decide not to amend its Energy Code to implement the 2025 and 2027 standards. Denver could also amend the standards before implementing them. This is precisely the circumstance where a court should find a claim is not ripe. *See, e.g.*, *Palma*, 707 F.3d at 1158.

The 2025 and 2027 standards are also not fit for review because Denver can modify the standards when it subsequently adds them to the Energy Code. Notably, Denver previously did

---

[2] Denver's Revised Municipal Code is available at https://library.municode.com/co/denver/codes/code_of_ordinances.

just that when it added the similar 2023 standards to the Energy Code. When Denver directed development of the 2025 and 2027 standards in Municipal Code § 10-20(d) and (e), it also called for 2023 standards in § 10-20(c). *See* Compl. ¶ 22 (Docket No. 1) (discussing Ordinance No. 21-1310); Denver, Colo., Rev. Mun. Code ch. 10, art. II, § 10-20(c). When Denver added the 2023 standards to the Energy Code, it modified several of Municipal Code § 10-20(c)'s initial requirements. For example, when Denver added Municipal Code § 10-20(c)(5)'s space heating standards to Energy Code § C503.3.3, it also included additional requirements regarding the types of pressure testing required for natural gas piping (i.e., Denver added language in the Energy Code stating that pressure testing must comply with Section 406 of the International Fuel Gas Code ).[3] Denver similarly added additional details regarding gas pipe pressure testing when it added Municipal Code § 10-20(c)(6)'s standards for water heating to Energy Code § C503.4.1. In addition, Denver added language to Energy Code § C503.3.3's space heating requirements that clarify the standards do not apply when replacing package terminal air conditioners or vertical terminal air conditioners—and this language does not appear in Municipal Code § 10-20(c). Moreover, when Denver added Municipal Code § 10-20(c)(3)'s provisions for demand responsive storage electric water heaters to Energy Code § C404.111, it added additional details regarding the size of the equipment covered by the standard and three exceptions to the standard.

These examples show that Denver can, and already has, modified the standards outlined in Municipal Code § 10-20 when it later adds the standards to the Energy Code. Because the challenge to the future 2025 and 2027 standards is not ripe, the Court should dismiss the claim

---

[3] Denver's 2022 Energy Code is available at
https://denvergov.org/files/assets/public/v/8/community-planning-and-development/documents/ds/building-codes/2022-denver-building-and-fire-code.pdf.

7

and "protect" Denver from "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Wyoming* 871 F.3d at 1141 (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08).

The other fitness for review factors consider whether a claim involves purely legal issues and if further factual development is necessary. *See id.* Although the claim here involves purely legal issues and no further factual development is necessary, these factors do not outweigh the lack of final action. Because Denver has not taken final action to implement the 2025 and 2027 standards, the Industry Groups ask the Court to resolve an issue that "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Palma*, 707 F.3d at 1158 (quoting *Initiative & Referendum Inst.*, 450 F.3d at 1097).

### B.     Hardship to the parties of withholding review

When determining whether a party will suffer hardship if the court withholds review, courts consider whether withholding review would "create adverse effects of a strictly legal kind" and cause a "direct and immediate dilemma" to the party seeking judicial review if the court does not decide the case now. *Wyoming*, 871 F.3d at 1142–43 (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 809; *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012)). The Industry Groups will suffer no harm if the Court withholds review of the 2025 and 2027 standards.

The Industry Groups will not suffer hardship if the Court withholds review because the 2025 and 2027 standards do not currently impose any legal requirements or obligations on the Industry Groups. Revised Municipal Code § 10-20(d) and (e) provides instructions that apply to Denver regarding the timing and initial requirements of the 2025 and 2027 standards, but it does not impose direct obligations on building owners. The 2025 and 2027 standards will apply to the

8

Industry Groups' members only if Denver amends its Energy Code in the future to include these standards. Until then, Municipal Code § 10-20(d) and (e) impose no requirements.

The 2023 building code standards also illustrate why the 2025 and 2027 standards create no legal obligations and are not final action. Similar to Municipal Code § 10-20(d) and (e), § 10-20(c) contains the 2023 standards, and it states that "[n]o later than March 1, 2023, the Denver Building and Fire Code shall be amended to implement" those requirements. Denver, Colo., Rev. Mun. Code ch. 10, art. II, § 10-20(c). Unlike the 2025 and 2027 standards, Denver has taken subsequent action to add the 2023 standards to the Energy Code and to modify the standards when it passed Ordinance No. 22-1653. *See* Compl. ¶ 30 (Docket No. 1). Because the 2023 standards are now part of the Energy Code, they are final and enforceable against owners of covered buildings. In contrast, Denver has not yet added the 2025 and 2027 standards to the Energy Code, and it must take subsequent action to do so. Thus, the 2025 and 2027 standards are not final, and they impose no legal obligations on the Industry Groups' members.

Moreover, the 2025 and 2027 standards do not require the Industry Groups to take any action in anticipation of Denver later implementing the standards. The 2025 and 2027 standards will apply to owners of existing buildings that replace certain types of space and water heating equipment. Before Denver adds the 2025 and 2027 standards to the Energy Code and they become final, the standards will have no impact on a building owner who replaces any equipment covered by the standards. And even after they go into effect, the 2025 and 2027 standards would affect an existing building only if the owner subsequently replaces space and water heating equipment covered by the standards. The Complaint broadly discusses the alleged harms caused by the challenged standards, but it does not identify any harms that are specific to

9

the 2025 and 2027 standards, rather than the current standards they also challenge in Energy Code §§ C403.2.4 and C404.10. *See* Compl. ¶¶ 7, 11–17 (Docket No. 1). The 2025 and 2027 standards do not cause "a direct and immediate impact" on the Industry Groups, *Palma*, 707 F.3d at 1158, and the Industry Groups do not face a "direct and immediate dilemma" if the Court rules the claim is unripe, *Wyoming*, 871 F.3d at 1143. The Industry Groups will therefore face no hardship if the Court withholds its review of the future 2025 and 2027 standards.

II.   **The Industry Groups' claim for relief is time barred under EPCA's statute of limitations.**

   A.   **The Industry Groups did not timely file their challenge to Denver's current building standards.**

In addition to challenging Denver's future 2025 and 2027 standards, the Industry Groups' claim for relief challenges two building code standards that are part of the Energy Code and thus currently in effect: Sections C403.2.4 and C404.10 of the Denver Energy Code. Compl. ¶¶ 79, 87–88 (Docket No. 1); *see also id.* at ¶¶ 21, 32–35. These standards apply to new and existing commercial and multi-family buildings. Although the Industry Groups' claim challenging these current standards is ripe for judicial review, the claim is time barred by the statute of limitations. The Court should thus dismiss the Complaint's cause of action challenging the current standards in §§ C403.2.4 and C404.10 of the Denver Energy Code and Municipal Code § 10-20(c), pursuant to Rule 12(b)(6). *See* Compl. ¶¶ 79, 87–88 (Docket No. 1).

   1.   **The Court should "borrow" EPCA's sixty-day statute of limitations.**

The Industry Groups' claim for relief argues the federal EPCA statute preempts Denver's building code standards. *Id.* at ¶¶ 78–85. The Industry Groups claim the Court has jurisdiction under EPCA's judicial review provision, 42 U.S.C. § 6306(c)(1), which provides federal district

10

courts with jurisdiction over cases challenging whether a State or local government is complying with EPCA. Compl. ¶ 8 (Docket No. 1). This judicial review provision does not include a statute of limitations. The Industry Groups also state the Court has jurisdiction under the federal question statute, 28 U.S.C. § 1331, which also does not contain a statute of limitations. Compl. ¶ 8 (Docket No. 1). Accordingly, "[a]s is often the case in federal civil law," in this case "there is no federal statute of limitations expressly applicable to this suit." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983).

When there is no expressly applicable federal statute of limitations, courts "borrow the most suitable statute or other rule of timeliness from some other source." *Id.* (internal quotation marks omitted). Courts will generally "borrow" the "most closely analogous" limitations period from state law. *Id.* However, there is an exception to this typical approach where courts will "borrow" a limitations period from federal law, rather than state law. *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33–35 (1995). As the Supreme Court has explained, courts "have not hesitated to turn away from state law" when "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello*, 462 U.S. at 172.

Here, the most closely analogous state limitations period for the Industry Groups' preemption claim is found in Colorado Revised Statutes § 13-80-102(1)(g) or (h). That state law provides a general, two-year statute of limitations for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "[a]ll actions against any public or governmental entity." Colo. Rev. Stat. § 13-80-102(1)(g), (h). The most

closely analogous federal limitations period is found in EPCA's judicial review section, which includes a sixty-day deadline for claims challenging certain Department of Energy rulemakings regarding energy conservation standards and other EPCA issues. 42 U.S.C. § 6306(b)(1).[4]

The Court should "borrow" and apply EPCA's sixty-day limitations period because EPCA itself provides a closer and more appropriate analogy to this EPCA preemption claim than the general, catch-all two-year limitations period in state law. *See DelCostello*, 462 U.S. at 172. This case involves a dispute about the scope and effect of federal energy conservation standards for certain gas-fired and electric equipment, the scope and effect of Denver's standards for similar equipment, and the potential preemptive effect of the federal standards on Denver's standards. *See, e.g.*, Compl. ¶¶ 63–77 (Docket No. 1). EPCA governs the federal energy conservation standards at issue in this case, EPCA provides detailed instructions on the preemptive effect of these federal standards, and EPCA includes a process for states to petition the Department of Energy to waive EPCA's preemption provisions. 42 U.S.C. §§ 6292, 6295, 6297(c), (d). EPCA therefore expressly encompasses all of the substantive and legal issues relevant to this case.

In contrast, the most closely analogous state limitations period is Colorado's general two-year statute of limitations, which applies to twelve different categories of actions. Colo. Rev. Stat. § 13-80-102(1). This catch-all limitations period broadly applies to many different types of actions. This procedural state law in no way addresses the substantive factual and legal issues in

---

[4] Congress adopted a four-year, catch-all statute of limitations for civil claims arising under any federal statute enacted after December 1, 1990. 28 U.S.C. § 1658(a). This statute of limitations does not apply here because Congress enacted the EPCA preemption provisions at issue in this case in 1987. *See* Nat'l Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, 101 Stat. 103 (Mar. 17, 1987) (adding the preemption provisions of 42 U.S.C. § 6297 to EPCA).

this case involving federal energy conservation standards, Denver's building code standards, and federal preemption. As a result, EPCA is a "significantly more appropriate vehicle" than the state law for determining the applicable limitations period, as EPCA reflects "the federal policies at stake" and "provides a closer analogy than available state statutes" to the issues in dispute regarding energy conservation standards and federal preemption. *DelCostello*, 462 U.S. at 172.

The Supreme Court has explained that "[w]hen the statute of origin contains comparable express remedial provisions, the inquiry" regarding whether to borrow a federal or state limitations period "usually should be at an end." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 359 (1991) (superseded by statute). This is because there is "no clearer indication of how Congress would have balanced the policy considerations implicit in any limitations provision than the balance struck by the same Congress in limiting similar and related protections." *Id.* Here, Congress determined that a sixty-day limitations period is appropriate for judicial review when the Department of Energy sets federal energy conservation standards under EPCA, and it authorized federal courts to grant the same kind of declaratory and injunctive relief that the Industry Groups request from this Court. 42 U.S.C. § 6306(b). The Court should therefore apply the same sixty-day limitations period to the Industry Groups' EPCA preemption claim, given that a sixty-day limitations period was the "balance struck by the same Congress in limiting similar and related protections" under EPCA. *Lampf*, 501 U.S. at 359.

### 2. The Industry Groups filed the Complaint more than sixty days after Denver implemented its current building code standards.

Denver implemented the current building code standards in January 2023. On January 9, 2023, the Denver City Council passed Denver Ordinance No. 22-1653, which added the standards to the Denver Energy Code as §§ C403.2.4 and C404.10. *See* Compl. ¶ 30 (Docket No.

1). The Industry Groups filed the Complaint challenging §§ C403.2.4 and C404.10 of the Energy Code on July 3, 2024. Accordingly, the Industry Groups filed their Complaint over 540 days after the Denver City Council passed Ordinance No. 22-1653. The Industry Groups' claim challenging the building code standards in §§ C403.2.4 and C404.10 of the Denver Energy Code is thus time barred by EPCA's sixty-day statute of limitations. Moreover, because the relevant date triggering the statute of limitations is clear from the Complaint, the Court can properly dismiss this claim at the motion to dismiss stage. *Herrera*, 32 F.4th at 991.[5]

> **B.  If the Court concludes the Industry Groups' challenge to Denver's future 2025 and 2027 building code standards is ripe, this claim is also time barred.**

Finally, as discussed in detail above, the Industry Groups' claim challenging Denver's future 2025 and 2027 building code standards for existing buildings is not ripe for judicial review. *See supra* pp. 4–10. If the Court disagrees with Sierra Club's ripeness argument and rules this claim is ripe, the claim challenging the 2025 and 2027 standards would be time barred by EPCA's sixty-day statute of limitations.

Denver passed the ordinance directing development of the 2025 and 2027 standards on November 24, 2021, when the Mayor signed Ordinance No. 21-1310, which passed Revised

---

[5] The Complaint is unclear on whether the Industry Groups also challenge the 2023 building code standards contained in Revised Municipal Code § 10-20(c). Although the Complaint asks the Court to declare all of Municipal Code § 10-20 unlawful, the Complaint makes no mention of § 10-20(c) or the Energy Code sections that implement § 10-20(c) (i.e., Energy Code §§ C404.11, C503.3.2, C503.3.3, C503.4.1). *See* Compl. ¶¶ 79, 85, 87–88 (Docket No. 1). If the Court construes the Complaint as challenging the 2023 standards in Municipal Code § 10-20(c), this claim is also time barred. Denver passed § 10-20(c) on November 24, 2021, when the Mayor signed Ordinance No. 21-1310. *See id.* at ¶ 22. Denver subsequently implemented these 2023 standards for existing buildings on January 10, 2023, when the Mayor signed Denver Ordinance No. 22-1653. *See id.* at ¶ 30. The Industry Groups filed their Complaint over 950 days after Denver passed Ordinance No. 21-1310 and over 540 days after it passed Ordinance No. 22-1653.

14

Municipal Code § 10-20(d) and (e). *See* Compl. ¶ 22 (Docket No. 1). The Industry Groups filed the Complaint challenging these two code provisions on July 3, 2024. The Industry Groups filed their Complaint over 950 days after Denver passed Ordinance No. 21-1310. Thus, if it is ripe, the Industry Groups' claim challenging the provisions relating to the 2025 and 2027 standards in Municipal Code § 10-20(d) and (e) is time barred by EPCA's sixty-day statute of limitations, and dismissing the claim in this Motion to Dismiss is proper. *Herrera*, 32 F.4th at 991.

## CONCLUSION

For the reasons discussed above, the Court should grant this Motion to Dismiss and dismiss the Complaint in its entirety under Rule 12(b)(6).

Dated September 5, 2024.

/s/ Michael A. Hiatt
Michael A. Hiatt
Robert Rigonan
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
(303) 623-9466
mhiatt@earthjustice.org
rrigonan@earthjustice.org

Matthew Gerhart
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Sierra Club
1650 38th St. Suite 103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

*Attorneys for Proposed Defendant-Intervenor Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024, I caused a true and correct copy of the foregoing **PROPOSED MOTION TO DISMISS** to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Ronald Scott Novak, Jr.
Megan H. Berge
Baker Botts LLP
700 K Street NW
Washington, DC 20001
(202) 639-7786
scott.novak@bakerbotts.com
megan.berge@bakerbotts.com

*Attorneys for Plaintiffs*

Angelo Amador
2055 L St NW
Washington, DC 20036
(202) 331-5913
AAmador@restaurant.org

*Attorney for Plaintiff Restaurant Law Center*

Michele Annette Horn
Denver City Attorney's Office
201 West Colfax Avenue
Denver, CO  80202-5332
(720) 913-3260
michele.horn@denvergov.org

*Attorney for Defendant*

/s/ Diana Ramirez
Diana Ramirez
Senior Litigation Assistant
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
dramirez@earthjustice.org