## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01862-PAB-KAS

RESTAURANT LAW CENTER, NATIONAL ASSOCIATION OF HOME BUILDERS OF
THE UNITED STATES, COLORADO RESTAURANT ASSOCIATION, HOME BUILDERS
ASSOCIATION OF METROPOLITAN DENVER, AMERICAN HOTEL & LODGING
ASSOCIATION, NATIONAL APARTMENT ASSOCIATION, and NATIONAL PROPANE
GAS ASSOCIATION,

Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER,

Defendant,

SIERRA CLUB,

Defendant-Intervenor.

---

### PLAINTIFFS' RESPONSE TO SIERRA CLUB'S MOTION TO DISMISS (ECF 16)

---

**I.    Plaintiffs challenge two Denver ordinances that regulate and restrict the use of gas
appliances as preempted under EPCA.**

The federal Energy Policy and Conservation Act ("EPCA") expressly preempts State and

local laws "concerning the energy efficiency [or] energy use" of gas appliances.  42 U.S.C.

§§ 6297(c), 6316(b)(2)(A).  In this action, Plaintiffs allege that two Denver ordinances "concern[]

the energy efficiency [or] energy use" of gas appliances and therefore are preempted by EPCA.

The first is Ordinance No. 21-1310, which was enacted on November 24, 2021, and added

§ 10-20 to the Denver Revised Municipal Code.  Section 10-20 requires Denver to amend its

Building and Fire Code to implement "electrification requirements" in three phases.

In phase 1, and by no later than March 1, 2023, the Code must be amended to require that,

*inter alia*, commercial and multifamily building owners replace gas-fired warm-air furnaces only with ones that do not exceed a certain level of nitrogen oxide emissions as a result of the furnaces' energy use. *See* Denver Rev. Mun. Code § 10-20(c).

In phase 2, and by no later than January 1, 2025, the Code must be amended to mandate that, *inter alia*, exterior gas-fired warm-air furnaces in need of replacement must be replaced with, or become supplemental to, an electric heating system and that storage and instantaneous water heaters may only be replaced with electric alternatives. *See id.* § 10-20(d).

And in phase 3, by no later than January 1, 2027, the Code must be amended to mandate that, *inter alia*, gas-fired boilers for water or space heating must be replaced by electric equipment, such that 50% or more of the building's heating needs are met using electric equipment. Electrically operated air conditioners also may only be replaced by electric equipment that provides both heating and cooling. *See id.* § 10-20(e).

The second challenged ordinance, No. 22-1653, was enacted on January 10, 2023, and amended § 10-16 of the Municipal Code to adopt the 2022 Building and Fire Code, which includes the 2022 Denver Energy Code. *See id.* § 10-16. As relevant here, the 2022 Denver Energy Code includes § C403.2.4, which mandates that "[f]ossil-fuel warm air furnaces and electric resistance space heating equipment shall not be permitted for space heating." Denver Energy Code § C403.2.4. Section C404.10 similarly provides that "[f]ossil fuel and electric resistance water heaters shall not be permitted to provide potable hot water." Denver Energy Code § C404.10.

## II.    Plaintiffs' preemption claim is prudentially ripe.

Sierra Club concedes the ripeness of Plaintiffs' challenge to Ordinance No. 12-1653 and the § 10-20(c) portion of Plaintiffs' challenge to Ordinance No. 21-1310, but it contends that Plaintiffs' challenge to the parts of Ordinance No. 21-1310 that add §§ 10-20(d) and (e) is not prudentially ripe. Mot. to Dismiss, ECF 16, at 4-10. The prudential ripeness analysis consists of

2

balancing "(1) the fitness of the issue for review, and (2) the hardship to the parties of withholding judicial review." *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1314 (10th Cir. 2024). Both factors confirm that Plaintiffs' claim is prudentially ripe.

A.    The fitness-for-review analysis asks "whether the issue is a purely legal one, whether the agency decision in dispute was final, and whether further factual development would significantly advance the ability to deal with the legal issues presented." *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017). Sierra Club agrees that Plaintiffs' suit meets two of the three factors: it "involves purely legal issues and no further factual development is needed." Mot. to Dismiss, ECF 16, at 8. That concession is worth pausing on, because "a purely legal claim in the context of a facial challenge" like Plaintiffs' "is presumptively reviewable." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1282 (D.C. Cir. 2005); *see also United States v. Sup. Ct. of New Mexico*, 980 F. Supp. 2d 1334, 1341 (D.N.M. 2013) ("The overwhelming majority of courts hold that cases involving facial challenges based upon preemption are fit for judicial review even without specific factual development or the law actually being enforced.").

That makes sense. Here, for example, the Court has everything it needs to resolve the purely legal question of whether §§ 10-20(d) and (e) "concern[] the energy efficiency [or] energy use" of gas appliances and therefore are preempted by EPCA. 42 U.S.C. §§ 6297(c), 6316(b)(2)(A). Given that clear legal question before the Court and its "virtually unflagging" obligation "to hear and decide cases within its jurisdiction," the presumption must be to decide the matter now. *Lexmark Int'l Inc. v. Statis Control Components, Inc.*, 572 U.S. 118, 126 (2014).

Boxed into a corner, Sierra Club places all its eggs in the finality basket, claiming that Plaintiffs' "claim is not fit for judicial review because the 2025 and 2027 standards contained in Revised Municipal Code § 10-20(d) and (e) are not Denver's final action on these standards." Mot.

to Dismiss, ECF 16, at 5-6. Sierra Club argues that the implementing regulations may "modif[y]" those standards with "additional details." *Id.* at 6-7. True enough, but that misses the point. "[T]hese contingencies would only be relevant if waiting for them to play out would 'significantly advance [the Court's] ability to deal with the legal issues presented or aid us in their resolution.'" *United States v. Sup. Ct. of New Mexico*, 839 F.3d 888, 904 (10th Cir. 2016) (alteration omitted) (quoting *Duke Power Co. v. Carolina Envt'l Study Grp., Inc.*, 438 U.S. 59, 83 (1978)). Here, however, Sierra Club never explains how these modifications or additional details affect the Court's review. And even a cursory examination of them confirms that they would not. Indeed, none of the examples that Sierra Club identifies in its motion has any relevance to the EPCA preemption analysis. *See* Mot. to Dismiss, ECF 16, at 7 (listing minor modifications). Whatever "modif[ications]" the implementing regulations may make and "additional details" they may add, the preemption issue presented here will remain the same. Either EPCA preempts these kinds of penalties for and bans on gas appliances, or it does not. The regulatory minutia that Sierra Club trumpets is irrelevant to that question.

To be clear, a lack of finality is not fatal to the inquiry. That is "[b]ecause no single factor is either necessary or sufficient to establish the ripeness of the issue for review." *Nw. Pipeline Corp. v. FERC*, 986 F.2d 1330, 1334 (10th Cir. 1993); *see also Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) ("The test for [prudential ripeness] is not rigid or mechanical, but instead flexible and context-specific."). Since the ultimate detail work to be done on the gas ban will not affect how this Court would assess the merits of Plaintiffs' claim, the two factors that everyone agrees favor review outweigh whatever concerns that any lack of absolute finality may present.

B.    Withholding review would also cause Plaintiffs hardship. Plaintiffs are experiencing actual harm that will only worsen as time passes. The Complaint chronicles the kinds

of harms Plaintiffs face from the gas ban. One member of Restaurant Law Center and Colorado Restaurant Association, for example, relies on gas cooking equipment and effectively cannot make the switch to electric. Compl., ECF 1, ¶¶ 11, 13. "Switching [from a gas stove] to an electric wok would make it impossible to keep . . . [quick] service with the restaurant's most popular menu item, which would effectively force the shutdown of the member's restaurant." *Id.* ¶ 11. And if the member continues to use gas, it will be harmed by the higher prices the gas ban will cause. *Id.*; *see also id.* ("[T]he bans will limit the pool of gas customers, thereby forcing existing gas customers to pay higher rates than they otherwise would if more customers were paying to support the system."); *id.* ¶ 14 (chronicling this same harm to another Plaintiff); *id.* ¶ 16 (same). Manufacturers of tankless gas water heaters and other appliances will also "face significant sales losses if Denver buildings can longer use their gas tankless products due to the" gas ban. *Id.* ¶ 12. Builders and buildings owners will also incur costs from being forced to choose electric over gas. *Id.* ¶¶ 12, 14-16. And because the gas ban will decrease gas sales, it will harm the businesses of those who market and transport gas. *Id.* ¶ 17.

In short, Plaintiffs are operating their businesses with the veritable Sword of Damocles hanging over them. At any moment, the promised additional restrictions on their gas appliances will spring into effect and cause them substantial harm. Those impending legal requirements affect Plaintiffs now. Because businesses require "considerable advance planning[,] . . . decisions to be made now or in the short future may be affected" by §§ 10-20(d) and (e). *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). For that reason, "requir[ing] the industry to proceed without knowing whether the [law] is valid would impose a palpable and considerable hardship." *Id.* at 201-02. Accordingly, "the issue of whether [those provisions are] preempted by federal law should be decided now." *Id.* at 202. And at the very

least, Plaintiffs' harm is sufficiently imminent to warrant judicial review. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent harm from occurring[.]"); *Sup. Ct. of New Mexico*, 839 F.3d at 903 ("an injury [that] is sufficiently imminent" can establish "ripeness").

*Roe No. 2 v. Ogden*, 253 F.3d 1225 (10th Cir. 2001), is illustrative on these points. In *Ogden*, law-school students and recent graduates challenged as unlawful under federal law certain questions on the bar-exam application concerning prior drug use. *Id.* at 1227-28. The Board of Law Examiners argued that the case was not prudentially ripe, submitting that it would not review the students' answers unless and until they graduated from law school and passed the bar. *Id.* at 1231. The district court agreed and concluded that because it was not certain whether the students would either graduate or pass the bar, their lawsuit involved "uncertain or contingent future events." *Id.* at 1230-31.

The Tenth Circuit reversed, holding that the students' lawsuit was prudentially ripe. In reaching this holding, the court determined that "[d]elayed review will cause the Students hardship." *Id.* at 1231. "'The Students are on a collision course with the disputed questions and a Board investigation," the court explained, and "[t]hey will have invested three years of their life and untold resources into their legal education." *Id.* at 1232. And "[w]hile there is always the chance that the Students will not graduate or fail the exam," the court acknowledged, "that contingency, in and of itself, is not sufficient to defeat ripeness." *Id.* "This is particularly true," the court reasoned, "in light of the substantial practical effect the questions and investigation have on the Students' long-term plans." *Id.* Also, because the students' claims "turn[ed] upon strictly legal issues and [did] not require facts that may not yet be sufficiently developed," the court had no trouble concluding that the case was ripe for review. *Id.*

6

It is much the same here. Plaintiffs are on a "collision course" with the gas ban. The gas ban is already affecting their "long-term plans," and it will imminently inflict additional harm on Plaintiffs in the near future. That is real hardship that warrants review now, especially in light of the purely legal nature of the challenge.

*     *     *

In sum, both prudential-ripeness factors weigh decisively in favor of reviewing Plaintiffs' preemption claim. Prudence does not require delaying the inevitable.

## III.    Plaintiffs' claim is timely.

A.    Sierra Club's argument that Plaintiffs' claim is untimely fails as well. Sierra Club recognizes that "Congress adopted a four-year, catch-all statute of limitations for civil claims arising under any federal statute enacted after December 1, 1990." Mot. to Dismiss, ECF 16, at 12 n.4 (citing 28 U.S.C. § 1658(a)). Sierra Club then claims that § 1658 "does not apply here because Congress enacted the EPCA preemption provisions at issue in this case in 1987." *Id.* But that is only half right. While Congress enacted the EPCA preemption provision for *consumer* appliances in 1987, it enacted the EPCA preemption for *industrial* appliances in 1992. *See* Pub. L. 102-486, 106 Stat. 2776 (1992) (adding 42 U.S.C. § 6316(b)(2)(B)). Plaintiffs' claim arises from both. Compl., ECF 1, ¶¶ 52-77. So, by Sierra Club's own (and correct) logic, § 1658's four-year fallback limitations period for post-1990 enactments expressly applies to the part of Plaintiffs' EPCA preemption claim grounded in § 6316(b)(2)(B)'s preemption of state and local laws "concerning the energy efficiency or energy use" of industrial appliances. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that a claim falls under § 1658 if it "was made possible by a post-1990 enactment"). At the very least, therefore, that part of Plaintiffs' claim is timely since Ordinance Nos. 21-1310 and 22-1653 were enacted on November 24, 2021, and January 10, 2023, respectively, *see* City & Cnty. of Denver, Council B. 21-1310, 22-1653, and

Plaintiffs filed this action within four years of those dates.  *See* Compl., ECF 1 (July 3, 2024).

B.    As for the part of Plaintiffs' preemption claim grounded in 42 U.S.C. § 6297(c)'s preemption provision for state and local laws concerning covered consumer appliances, Plaintiffs agree with Sierra Club that no federal statute of limitations expressly applies to it.  "In such situations," the Court's "task is to borrow the most suitable statute or other rule of timeliness from some other source."  *United Gov't Sec. Officers of Am. Int'l Union v. Am. Eagle Protective Serv. Corp.*, 956 F.3d 1242, 1244 (10th Cir. 2020).  Here, there are three candidates: (1) § 1658's four-year fallback limitations period that generally applies to all "civil action[s] arising under an Act of Congress" enacted after 1990; (2) the two-year statute of limitations in C.R.S. § 13-80-102 that applies to "[a]ll actions against any public or governmental entity" and "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute"; and (3) the sixty-day statute of repose in 42 U.S.C. § 6306(b)(1) that applies to petitions for review challenging regulations that the U.S. Department of Energy issues under certain parts of EPCA.

The first of these is the most suitable limitations period to borrow here because of its application to extraordinarily similar claims and the unique federal interests implicated in a preemption action like this one.  Even though § 1658 does not apply by its literal terms, that does not prevent the Court from borrowing its four-year limitations period, just as it might do for any other limitations period.  *See* Mikva & Pfander, *On the Meaning of Congressional Silence: Using Federal Common Law to Fill the Gap in Congress's Residual Statute of Limitations*, 107 Yale L.J. 393, 397 (1997).  Indeed, there is good evidence that "the congressional rejection of retroactivity [*i.e.*, pre-1990 application of § 1658] meant to preclude only the reopening of those periods that had been fixed with relative certainty as of 1990."  *Id.*  And as the dearth of authority on this issue demonstrates, the limitations period for Plaintiffs' consumer-appliance preemption claim is far

from a settled matter now and was, if anything, less so in 1990.[1]

As for its suitability, surely there is no more appropriate option than the one Congress selected for the virtually identical preemption provision—from the very same statute—for state and local laws concerning industrial appliances. *Cf. Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000) ("Thus borrowing the three-year limitations period . . . ensures that identical claims remain viable for an identical period."). After all, it would make no sense for different limitations periods to apply to those two EPCA preemption provisions for consumer and industrial appliances. Plus, § 1658's four-year limitations period is also the one Congress chose to apply where, as here, the federal law establishing the defendant's liability lacks one. Given all of that, it is difficult to imagine how a different limitations period could be more suitable.

To be sure, the federal-law nature of § 1658 presents an obstacle, but not an insurmountable one. "[R]esort to state law remains the norm for borrowing of limitations periods." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 171 (1987); *see id.* at 158 n.12 (recognizing the "general preference for borrowing state limitations periods"). That "usual rule" "may not be lightly abandoned." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355-56 (1991). "Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law" and borrow a federal limitations period instead. *DelCostello*, 462 U.S. at 171-72. Thus, "[s]tate limitations periods will not be borrowed if their

---

[1] To be clear, *Laurino v. Tate*, 220 F.3d 1213 (10th Cir. 2000), is not inconsistent with this position. There, the Tenth Circuit opined not on whether § 1658's limitations period should be borrowed, but rather on whether the claim at issue there was based on a post-1990 enactment such that § 1658 would expressly apply to it. *See id.* at 1217-18.

application would be inconsistent with the underlying policies of the federal statute." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367 (1977). Both the Supreme Court and the Tenth Circuit have taken that path in appropriate cases. *See, e.g.*, *DelCostello*, 462 U.S. at 162 (opting to borrow a federal limitations period over a state one); *Atl. Richfield Co. v. NL Indus., Inc.*, 132 F.4th 1220, 1228 (10th Cir. 2025) (same); *United Gov't Sec. Officers*, 956 F.3d at 1244-46 (same).

This is another such case. The four-year limitations period that applies to industrial-appliance preemption claims is more closely analogous than any state limitations period possibly could be. Moreover, the nature of Plaintiffs' claim—a federal preemption challenge against two local ordinances—makes any state limitations period a poor fit at best. After all, the entire point of such a claim is "to enforce the supremacy of federal law." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 898 (10th Cir. 2017). "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life*, 432 U.S. at 367. Here, surely that means state law should not prevent the resolution of such a core concern that goes to the heart of our federal system. *See Lampf*, 501 U.S. at 355-56 ("[W]hen the operation of a state limitations period would frustrate the policies embraced by the federal enactment, this Court has looked to federal law for a suitable period."); *id.* at 356 ("[D]epartures from the state-borrowing doctrine have been motivated by this Court's conclusion that it would be 'inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.'" (quoting *DelCostello,* 462 U.S. at 161)). Otherwise, states could largely insulate themselves from preemption challenges by imposing unusually short limitations periods. Thus, "the federal policies at stake and the practicalities of litigation make" § 1658's four-year limitations period "a significantly more appropriate vehicle

for interstitial lawmaking" than a shorter state statute of limitations. *DelCostello*, 462 U.S. at 172.

C.     In the event the Court disagrees with the above analysis, there is no real contest between the two other available options. Colorado's two-year statute of limitations for "[a]ll actions against any public or governmental entity" and "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" under C.R.S. § 13-80-102 clearly beats out the federal sixty-day repose period under 42 U.S.C. § 6306(b)(1) governing petitions for review challenging certain U.S. Department of Energy regulations.

Although it is less suitable than § 1658's four-year limitations period for the reasons discussed above, there are serious arguments to be made in support of Colorado's two-year limitations period. Perhaps most obviously, it is a state statute of limitations and thus benefits from the "general preference for borrowing state limitations periods" that "may not be lightly abandoned." *Lampf*, 501 U.S. at 355-56; *DelCostello*, 462 U.S. at 158 n.12. That is no small matter. There is also the fact that the Colorado statute of limitations specifically applies to the kind of claim Plaintiffs assert here: an action "against any public or governmental entity" and "upon liability created by a federal statute where no period of limitation is provided in said federal statute." C.R.S. § 13-80-102(g), (h).

It would take a compelling case to displace that on-point limitations period with a federal one. As discussed above, § 1658's four-year limitations period can do so only due to its (1) applicability to analogous claims—*i.e.*, EPCA industrial-appliance preemption claims and preemption claims based on post-1990 statutes—and (2) greater protection of federal interests by providing a longer limitations period for preemption claims. But it is a very different story for § 6306(b)(1)'s sixty-day repose period, which (1) does not apply to any even remotely analogous claims, and (2) undermines, rather than protects, federal interests by providing a much shorter

repose period for preemption claims. In no event could such an inapt repose period displace Colorado's statute of limitations for this claim.

It is hard to overstate the differences between the types of regulatory challenges that § 6306(b)(1) applies to and the preemption claim at issue here. A petition for review of a U.S. Department of Energy regulation and a preemption lawsuit challenging a statute or ordinance have next to nothing in common. Sure, at the highest level of generality, both involve EPCA, but the similarity ends there. They are otherwise different legal vehicles that assert different claims in a different posture with a different remedial scheme.

Consider an EPCA preemption lawsuit like this one. Plaintiffs sustained harm from ordinances and then commenced suit by filing a complaint in this Court. The lawsuit is governed by the Federal Rules of Civil Procedure, which permit motions to dismiss under Rule 12(b)(6), like the one being considered here. Depending on the outcome of that motion and this Court's view of the merits, it may issue a declaratory judgment declaring the ordinances preempted and a permanent injunction enjoining Denver from enforcing them. At that point, Denver and Sierra Club would have the right to appeal to the Tenth Circuit, which in turn would review this Court's legal determinations *de novo* and remedial decisions for abuse of discretion. *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1272 (10th Cir. 2011).

The petition-for-review process under § 6306(b)(1) is completely different. Before a party would even file a petition for review, it would have participated in notice-and-comment rulemaking, pursuant to which interested persons can voice views, arguments, and questions to the U.S. Department of Energy and other interested persons regarding a proposed rule. *See* 42 U.S.C. § 6306(a). A person affected by a rule can then file a petition for review sixty days after the Department of Energy promulgates the rule—though not in district court, but instead directly in

the circuit court of appeals and under the Rules of Appellate Procedure. *Id.* § 6306(b); Fed. R. App. P. 15. This distinctive course reflects the fact that administrative proceedings would have already taken place on record, *see* 42 U.S.C. § 6306(a)(2)(3), (b),[2] as well as Congress's intention to streamline judicial review and economize judicial resources with respect to agency rulemaking, *see Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1148 (9th Cir. 2009) (EPCA's petition-for-review process reflects "considerations of efficiency" and "judicial economy" by allowing circuit courts to hear them in the first instance); Wright & Miller, *Special Statutory Review Proceedings*, 33 Fed. Prac. & Proc. Judicial Review § 8303 (2d ed.) ("Another important feature of many special statutory review schemes is that they impose short time limits for challenging rules."). When the circuit court considers the challenged rule on the merits, it employs typical administrative-law standards of review, such as "substantial evidence" review, 42 U.S.C. § 6306(b)(2), and issues typical administrative-law remedies, such as vacatur, *id.* § 6306(b)(3)-(4).

The takeaway is that Plaintiffs' preemption claim against Denver has almost nothing in common with the petition-for-review process under § 6306(b)(1), and thus the sixty-day repose period certainly is not the "most closely analogous statute of limitations" or the "closest fit." *Atl. Richfield Co.*, 132 F.4th at 1228; *see also Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 659 (4th Cir. 2018) (focusing on whether the borrowed statute contains "essentially the same rights and remedies"). That alone disqualifies it as a serious candidate for borrowing.

Nor does the fact that § 6306(b)(1)'s sixty-day statute of repose appears in EPCA somehow override all the above reasoning to make it the limitations period of choice. *Contra* Mot. to Dismiss, ECF 16, at 13. It is true that *Lampf* held there is "no clearer indication of how Congress

---

[2] *See also* Wright & Miller, *Jurisdictional Grants in Special Statutory Review Proceedings*, 33 Fed. Prac. & Proc. Judicial Review § 8314 (2d ed.) (explaining this point in further detail).

would have balanced the policy considerations implicit in any limitations provision than the balance struck by the same Congress in limiting similar and related protections" and observed that "[w]hen the statute of origin contains comparable express remedial provisions, the inquiry usually should be at an end." *Lampf*, 501 U.S. at 359. But that gets Sierra Club nowhere.

For one, *Lampf* is limited to the wholly different context where an implied cause of action arises from a statute that already contains an express cause of action with a specified limitations period: "[W]here . . . the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should first look to the statute of origin to ascertain the proper limitations period." *Id.* This case, in contrast, does not involve an implied cause of action. That alone renders it of little use to Sierra Club. *See Telerian Corp. v. Int'l Broth. of Elec. Workers, Loc. No. 6*, 977 F.2d 591 (9th Cir. 1992) ("*Lampf* is distinguishable because it involves a judicially-created cause of action . . . .").

In any event, *Lampf* would not aid Sierra Club even if it applied beyond that unique context. As detailed above, the petition-for-review process under § 6306(b)(1) contains neither "similar and related protections" nor "comparable express remedial provisions" as a preemption lawsuit. *Lampf*, 501 U.S. at 359. For that reason, there is no scenario in which those passages from *Lampf* could support the application of the sixty-day statute of repose here.

Lastly, there is the problem that § 6306(b)(1) is not even a statute of limitations, but rather a statute of repose. This is not merely a matter of semantics. As the Supreme Court made clear just last year, statutes of limitations and statutes of repose are very different:

> A statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued. . . . A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action that is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. Such statutes bar any suit that is brought after a specified time since the defendant acted . . . even if this period ends before the plaintiff has

14

suffered a resulting injury. . . . Statutes of limitations require plaintiffs to pursue diligent prosecution of known claims; statutes of repose reflect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 812-13 (2024).  The sixty-day deadline for petitions for review plainly functions as a statute of repose, as the sixty days runs not from the date of accrual but rather from "the date on which such rule is prescribed."  42 U.S.C. § 6306(b)(1).

This distinction matters because a statute of repose reflects a fundamentally different legislative judgment.  In § 6306(b)(1), for example, Congress made a specific judgment regarding the extent of the U.S. Department of Energy's liability and the time by which challenges to its rulemaking must be asserted (a common judgment in the federal administrative context).[3] Congress obviously made no similar judgment about protecting states and localities from preemption lawsuits.  That is yet another reason why the sixty-day statute of repose is not a viable option for a borrowed limitations period here.

By: */s/ J. Mark Little*
J. Mark Little
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Scott Novak
Baker Botts L.L.P.
700 K St NW
Washington, DC 20001
(202) 639-1316
scott.novak@bakerbotts.com

*Attorneys for Plaintiffs*

---

[3] *E.g.*, 15 U.S.C. § 78y(a)(1) (permitting an "aggrieved" person to challenge an SEC order in a court of appeals "within sixty days after entry of the order"); 28 U.S.C. § 2344 ("any party aggrieved by the final order" of an agency can file a petition for review "within 60 days after its entry" in the "court of appeals"); 42 U.S.C. § 7607(b)(1) (same for the EPA).

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Michele A. Horn
Assistant City Attorney
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
michele.horn@denvergov.org

*Attorney for Defendant the City and County of Denver*

Angelo Amador
2055 L St NW
Washington, DC  20036
aamador@restaurant.org

*Attorney for Restaurant Law Center*

Michael A. Hiatt
Robert Rigonan
Diana Ramirez
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
(303) 623-9466
mhiatt@earthjustice.org
rrigonan@earthjustice.org
dramirez@earthjustice.org

Matthew Gerhart
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Sierra Club
1650 38th St. Suite 103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

*Attorneys for Defendant-Intervenor Sierra Club*

/s/ J. Mark Little
J. Mark Little
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

16