**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-01862-PAB-KAS

RESTAURANT LAW CENTER, NATIONAL ASSOCIATION OF HOME BUILDERS OF
THE UNITED STATES, COLORADO RESTAURANT ASSOCIATION, HOME BUILDERS
ASSOCIATION OF METROPOLITAN DENVER, AMERICAN HOTEL & LODGING
ASSOCIATION, NATIONAL APARTMENT ASSOCIATION, and NATIONAL PROPANE
GAS ASSOCIATION,

      Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER,

      Defendant,

SIERRA CLUB,

      Defendant-Intervenor.

---

**DEFENDANT-INTERVENOR SIERRA CLUB'S REPLY IN SUPPORT OF
MOTION TO DISMISS**

---

**ARGUMENT**

I.    **The Industry Groups' claims challenging Denver's future 2025 and 2027 building
code standards are not ripe for judicial review.**

The Industry Groups' challenges to Ordinance 21-1310's provisions to adopt 2025 and

2027 standards are not prudentially ripe.[1] Mot. to Dismiss at 4–10 (Docket No. 16). Denver has

not implemented the Ordinance by adding these standards to its Energy Code. Until it does so,

the 2025 and 2027 provisions are not enforceable and impose no obligations on building owners.

---

[1] Ordinance 21-1310, codified in relevant part at Denver, Colo., Rev. Mun. Code ch. 10, art. II, §
10-20, instructs Denver to add electrification standards to its Energy Code by January 1, 2023,
2025, and 2027. Sierra Club refers to these as the 2023, 2025, and 2027 standards.

**A.      The claims challenging potential, future standards are not fit for review.**

The Industry Groups' challenges to the 2025 and 2027 standards are not fit for review, as

Denver has not revised the Energy Code to include these standards, and therefore they are not

final. *Id.* at 5–8; *see also Wyoming v. Zinke*, 871 F.3d 1133, 1141–42 (10th Cir. 2017).

Moreover, Denver's recent decisions further demonstrate that the Industry Groups'

challenges are not fit for review. When Denver adopted a new Energy Code last month, it

decided not to follow Ordinance 21-1310's direction to add the 2025 standards to the Code by

January 1, 2025—Denver did not implement any of the 2025 provisions in Municipal Code § 10-

20(d).[2] And Denver recently extended, and in one case eliminated, compliance deadlines for a

related decarbonization initiative by several years. Denver Off. of Climate Action, Sustainability

& Resiliency, Rules & Reguls. Governing Energize Denver Bldg. Energy Benchmarking &

Performance Requirements, § 4.7(E) (Apr. 1, 2025).[3] These actions underscore the uncertainty

about whether and how Denver will implement the 2025 and 2027 standards.

The Industry Groups attempt to downplay the 2025 and 2027 provisions' lack of finality

by arguing that they have brought a purely legal challenge, which is presumptively reviewable.

Resp. at 3 (Docket No. 39). But the cases they cite are inapposite because they involve facial

challenges to final legal requirements that imposed obligations on the plaintiffs. For example, in

*National Association of Home Builders v. U.S. Army Corps of Engineers*, the appellants

challenged final water permits that "create[d] legal rights and impose[d] binding obligations," on

---

[2] Denver's new 2025 Energy Code is available at
https://denvergov.org/files/assets/public/v/1/community-planning-and-
development/documents/ds/building-codes/2025_denver_building_code.pdf.
[3] Available at https://www.denvergov.org/files/assets/public/v/1/climate-action/documents/
energize-denver-hub/energize-denver-rules-and-regulations-april-2025-redline.pdf.

the plaintiffs. 417 F.3d 1272, 1279, 1282 (D.C. Cir. 2005). *United States v. Supreme Court of New Mexico* similarly involved a facial challenge to codified, binding provisions of the New Mexico Rules of Professional Conduct. 839 F.3d 888, 896, 904 (10th Cir. 2016).

In contrast, the Industry Groups challenge provisions of the Ordinance that do not impose any legal requirements on them, but instead express Denver's intention to adopt standards in the future. The 2025 and 2027 provisions in Ordinance 21-1310 cannot be enforced against the Industry Groups. Denver may never implement the 2025 and 2027 provisions, or it may change them when it adopts them into the Energy Code. In analogous circumstances, courts have found that even purely legal challenges were not ripe. *See Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54*, 468 U.S. 491, 512 (1984) (finding a preemption challenge unripe where a Commission had asserted authority under the state law to impose a sanction but had not actually applied any sanction); *Atl. States Legal Found. v. Env't Prot. Agency*, 325 F.3d 281, 282–85 (D.C. Cir. 2003) (finding a challenge to EPA regulations unripe where "EPA's regulations will not take effect unless and until" a state agency adopts them). These cases underscore that "a plaintiff's claim, though predominantly legal in character" is not ripe if it "depends upon future events that may never come to pass, or that may not occur in the form forecasted." *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1061 (10th Cir. 2017) (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995)).

The Industry Groups wave away these finality issues as mere "regulatory minutia" that do not impact the preemption analysis. Resp. at 4 (Docket No. 39). This mischaracterizes the changes Denver may make in adopting the 2025 and 2027 standards and their effect on this facial challenge. Contrary to the Industry Groups' mischaracterization, Denver's ordinance is not a

simple blanket "ban[] on gas appliances," but a program with a carefully limited scope,
compliance flexibilities, and exemptions that Denver can change through the code development
process. *Id.* For example, when Denver revised the Energy Code to implement the Municipal
Code's 2023 provisions, it entirely excluded two standards that imposed conditions on the
replacement of gas-fired space and water heating equipment. *Compare* Mun. Code § 10-20(c)(1),
(2), *with* 2022 Denver Energy Code. Denver also took advantage of the discretion Ordinance 21-
1310 grants it to define the range of "emergency equipment replacement[s]" that are exempt
from the 2023 standards. *See* 2022 Denver Energy Code §§ C202, C503.3.3, C503.4.1.

Far from "minutia," these types of changes affect the content and scope of the legal
requirements the 2025 and 2027 provisions impose, which in turn affect the substance of the
Industry Groups' facial challenge. The Court cannot conduct a preemption analysis for a facial
challenge without first knowing what the law is that the Industry Groups challenge—and here,
there are no 2025 and 2027 laws that impose any compliance obligations on the Industry Groups.
Until Denver incorporates the 2025 and 2027 standards into its Energy Code, the Court does not
know what those standards require the Industry Groups to do. The Industry Groups fail to
explain how the Court could determine whether the Energy Policy and Conservation Act (EPCA)
preempts 2025 and 2027 standards without first knowing whether, and if so how, Denver will
actually implement and apply those standards to building owners.

The history of how Denver added the 2023 standards to the Energy Code is instructive.
Had a court conducted a preemption analysis of the Ordinance's 2023 provisions before Denver
implemented them in the Energy Code, it would have analyzed different legal requirements than
Denver ultimately adopted. The same may be true for the 2025 and 2027 standards.

B.    **Withholding review of the future standards will not cause hardship.**

Withholding review of the future 2025 and 2027 standards will not cause a "direct and immediate dilemma," and so will not cause the Industry Groups harm. *Wyoming*, 871 F.3d at 1143 (internal quotation marks omitted). The Industry Groups list examples of future harms they are currently bracing for. Resp. at 5–6 (Docket No. 39). But the Ordinance's 2025 and 2027 provisions do not impose any legal obligations on the Groups' members, who need not "depart[] from the status quo" until Denver implements the standards. *Wyoming*, 871 F.3d at 1143.

Tellingly, the Industry Groups do not claim their members have experienced any concrete harm from the provisions regarding the 2025 and 2027 standards. They do not claim that their members are taking any actions, like altering their buildings, paying higher gas prices, or reducing gas usage, to prepare for the chance that Denver may add the 2025 and 2027 standards to its Energy Code. In such situations, delaying judicial review will not harm the Industry Groups because they are "not faced with the choice of complying with" the challenged standards "or facing sanctions." *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1237 (10th Cir. 2013); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1218 (9th Cir. 2006) ("[W]here . . . there are substantial uncertainties bearing on the legal analysis to be performed, there is a high threshold requirement for hardship.").

Moreover, the Industry Groups' purported harms rely on future events that are too speculative and contingent. For example, in *Roe No. 2 v. Ogden,* on which the Industry Groups rely, while it was not certain that the plaintiffs would graduate law school and pass the bar exam, it was certain that upon doing so those students must have answered the challenged bar application questions and faced legal consequences. 253 F.3d 1225, 1232 (10th Cir. 2001). In

another case the Industry Groups cite, the California Energy Commission might not have ultimately granted the utilities' certification applications, but the utilities needed to incur investment costs immediately to be eligible for approval. *See Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 918 (9th Cir. 1981), *aff'd sub nom. Pac. Gas & Electric Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 223 (1983).

The Industry Groups' alleged harms, by contrast, involve multiple contingencies. For the Industry Groups to "be harmed by the higher prices the gas ban will cause," for example, Denver must implement the building code standards (which it may not do), *and* buildings must replace their gas appliances (which need not happen immediately), *and* this must lead to fewer gas customers (which may not happen depending on other market factors). Resp. at 5 (Docket No. 39). This is exactly the kind of "speculative and hypothetical . . . issue" that the Tenth Circuit has refused to find ripe. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1419 (10th Cir. 1990).

In sum, the Court should dismiss the challenges to Denver Municipal Code Sections 10-20(d) and (e), regarding future 2025 and 2027 standards, because they are prudentially unripe.

## II.     The Industry Groups did not timely file their Complaint.

The Court should borrow and apply EPCA's 60-day statute of limitations for all claims. Mot. at 10–13 (Docket No. 16). The Industry Groups do not dispute that they brought their claims more than 60 days after Denver enacted the relevant ordinances and codes. *Id.* at 13–14. If the Court instead borrows the two-year limitations period in Colorado law, the challenges to the 2025 and 2027 standards are untimely. *Id.* at 14–15.

### A.     28 U.S.C. § 1658(a) does not apply to any of the Industry Groups' claims.

The Industry Groups argue the Court should apply the catch-all four-year statute of

limitations in 28 U.S.C. § 1658(a). Resp. at 7–11 (Docket No. 39). But EPCA forecloses reliance on this statute of limitations, including for claims concerning industrial appliances. EPCA forbids reliance on general federal procedural statutes unless the statute specifically mentions EPCA. Section 6306(b)(5) states: "The procedures applicable under this part" shall not be considered to be "modified," "affected," or "superseded" by any other law unless the law "specifically amends" or specifically refers to "this part." 42 U.S.C. § 6306(b)(5). "This part" includes both the consumer preemption provision—which, like Section 6306(b)(5) is in EPCA Part A—and the industrial preemption provision the Industry Groups rely on. *See id.* § 6316(a), (b)(1) (incorporating § 6306 to Part A-1, which includes the industrial preemption provision).

The "procedures applicable" include procedures establishing statutes of limitation for seeking judicial review. Congress placed Section 6306(b)(5) within the section titled "Administrative procedure and judicial review," directly alongside the 60-day limitations period for claims regarding energy conservation standards rulemakings. *See id.* § 6306(b)(1). This shows that the timeframe for judicial review is a "procedure" for which Congress intended to maintain the status quo, unless it alters the status quo through a subsequent statute that refers to EPCA. Thus, although EPCA does not include an explicit statute of limitations for preemption claims, when Congress enacted EPCA's consumer preemption and judicial review provisions in 1987, it intended to preserve the then-existing procedure for borrowing a limitations period for consumer equipment. In 1992, Congress reaffirmed that this procedure should apply to industrial equipment by incorporating Section 6306 by reference in Section 6316.

The Industry Groups fail to explain how applying a general, procedural statute such as 28 U.S.C. § 1658(a), which does not even mention EPCA, is compatible with 42 U.S.C. §

6306(b)(5)'s requirements—because it is not. 28 U.S.C. § 1658(a) neither "specifically amends" nor "refer[s] to" and "declar[es]" that it supersedes any part of EPCA. 42 U.S.C. § 6306(b)(5). EPCA's plain language thus prohibits reliance on 28 U.S.C. § 1658(a).

Finally, the Industry Groups' argument for applying 28 U.S.C. § 1658(a) assumes that their claims arise solely under a post-1990 federal statute. Yet paragraph 8 of the Complaint alleges the Court has jurisdiction under 42 U.S.C. § 6306(c), which Congress added to EPCA in 1987. *See* National Appliance Energy Conservation Act of 1987, Pub. L. 100–12, § 9, 101 Stat. 103, 124 (1987). The Industry Groups fail to reconcile their reliance on a jurisdictional provision in a pre-1990 amendment to EPCA with 28 U.S.C. § 1658(a), which applies only to actions arising under post-1990 federal statutes.

### B.    28 U.S.C. § 1658(a) cannot apply to claims regarding consumer appliances.

Even if the Court were to conclude that the four-year limitations period in 28 U.S.C. § 1658(a) applies to claims regarding industrial appliances, the federal catch-all limitations period cannot apply to claims regarding consumer appliances. The Industry Groups argue that 28 U.S.C. § 1658(a) applies to industrial appliance claims because those claims arise under a post-1990 amendment to EPCA. Resp. at 7 (Docket No. 39). But they acknowledge that their consumer appliance claims do not arise under a post-1990 statute, because EPCA's preemption provision for consumer appliances was enacted in 1987. *Id.*

Ignoring 28 U.S.C. § 1658(a)'s explicit limitation to actions arising under federal statutes enacted after 1990, the Industry Groups argue that their consumer appliance claims should be subject to the same limitations period as their industrial appliance claims purely for policy and consistency reasons. But Congress expressly declined to apply 28 U.S.C. § 1658(a) retroactively

to pre-1990 statutes. *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 380 (2004). If Congress intended to apply the catch-all limitations period when it enacted EPCA's industrial preemption provision in 1992, it would have been aware that 28 U.S.C. § 1658(a) would not apply to the consumer preemption provision. Yet when Congress amended EPCA in 1992, it did not add a four-year statute of limitations to EPCA or amend 28 U.S.C. § 1658(a) to apply to pre-1990 statutes such as the 1987 EPCA amendments regarding consumer appliances. The Court therefore must reject the Industry Group's invitation to override Congress's intent.

**C.    Some claims are untimely under either potential statute of limitations.**

The Court has only two lawful options for borrowing a limitations period for the consumer appliance claims: the 60-day period in EPCA or the two-year period in Colorado law. Under either option, at least some of the Industry Groups' claims are untimely. The 60-day limitations period in EPCA is more appropriate because it "clearly provides a closer analogy than available state statutes," *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983), and it reflects the specific policy balance Congress struck for energy conservation issues in EPCA, *see Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 359 (1991) (superseded on other grounds by statute).[4] The state law 2-year catch-all provision inherently does not do this, and the Industry Groups admit that any state limitations period is "a poor fit at best." Resp. at 10 (Docket No. 39). All of their claims concerning consumer appliances would be untimely

---

[4] The Industry Groups' critique of *Lampf* does not address *Lampf*'s reasoning that there is "no clearer indication of how Congress would have balanced the policy considerations implicit in *any* limitations provision than the balance struck by the same Congress in limiting similar and related protections." 501 U.S. at 359 (emphasis added). Instead, they cite an unpublished, out-of-circuit opinion that purports to distinguish *Lampf* without any analysis. Resp. at 14 (Docket No. 39).

under a 60-day limitations period, because they were brought more than 60 days after Denver enacted the relevant Ordinances and Energy Code provisions.

If the Court declines to apply EPCA's 60-day limitations period, the next best option is the two-year limitations period in Colorado law. Colo. Rev. Stat. § 13-80-102. The Industry Groups' claims concerning consumer appliances in Ordinance 21-1310 were brought more than two years after enactment of the ordinance, and thus would be untimely.

## CONCLUSION

The Court should dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). The Court should borrow EPCA's 60-day limitations period and dismiss all claims as untimely. At a minimum, the Court should dismiss all claims challenging the consumer appliance provisions. The Court need not decide which limitations period applies to these claims, because they are untimely under both EPCA's 60-day limitations period and the state law two-year limitations period. The Court should also dismiss the claims challenging the 2025 and 2027 provisions in Municipal Code § 10-20(d) and (e) as prudentially unripe.

Dated July 16, 2025.

/s/ Michael A. Hiatt                      Matthew Gerhart
Michael A. Hiatt                          Jim Dennison
Emma Hardy                                Sierra Club
Earthjustice                              1536 Wynkoop St., Suite 200
633 17th Street, Suite 1600               Denver, CO 80202
Denver, CO 80202                          (303) 454-3346
(303) 623-9466                            matt.gerhart@sierraclub.org
mhiatt@earthjustice.org                   jim.dennison@sierraclub.org
ehardy@earthjustice.org

*Attorneys for Defendant-Intervenor Sierra Club*

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2025, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Ronald Scott Novak, Jr.
Baker Botts LLP
700 K Street NW
Washington, DC 20001
(202) 639-7786
scott.novak@bakerbotts.com

*Attorney for Plaintiffs*

Jonathan Mark Little
Baker Botts LLP
910 Louisiana St.
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

*Attorney for Plaintiffs*

Angelo Amador
2055 L St NW
Washington, DC 20036
(202) 331-5913
AAmador@restaurant.org

*Attorney for Plaintiff Restaurant Law Center*

Michele Annette Horn
Denver City Attorney's Office
201 West Colfax Avenue
Denver, CO 80202-5332
(720) 913-3260
michele.horn@denvergov.org

*Attorney for Defendant City
and County of Denver*

*/s/ Diana Ramirez*
Diana Ramirez
Senior Litigation Assistant
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
dramirez@earthjustice.org