IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01862-PAB-KAS

RESTAURANT LAW CENTER,
NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES,
COLORADO RESTAURANT ASSOCIATION,
HOME BUILDERS ASSOCIATION OF METROPOLITAN DENVER,
AMERICAN HOTEL & LODGING ASSOCIATION,
NATIONAL APARTMENT ASSOCIATION, and
NATIONAL PROPANE GAS ASSOCIATION,

       Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER,

       Defendant,

and

SIERRA CLUB,

       Defendant-Intervenor.

---

## ORDER

---

This matter comes before the Court on the Proposed Motion to Dismiss by

Applicant for Intervention Sierra Club [Docket No. 16].[1]  Plaintiffs filed a response.

---

[1] On September 5, 2024, defendant-intervenor Sierra Club filed a motion to intervene and for leave to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Docket No. 15, and filed the proposed motion to dismiss presently before the Court.  Docket No. 16.  On May 1, 2025, the assigned magistrate judge granted the motion to intervene and directed that the proposed motion to dismiss be accepted as filed.  Docket No. 35.

Docket No. 39.  Sierra Club filed a reply.[2]  Docket No. 41.  The Court has jurisdiction

pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND[3]

Plaintiffs are associations representing various businesses who believe they are

negatively impacted by laws and regulations enacted by the City and County of Denver

("Denver") regarding natural gas appliances.  Docket No. 1 at 4-11, ¶¶ 11-17.  Plaintiffs

claim that Denver's natural gas appliances laws are preempted by federal law.  *Id.* at 1,

¶ 1.

On January 9, 2023, the Denver City Council passed Denver Ordinance No. 22-

1653, amending Section 10-16 of the Denver Revised Municipal Code to adopt the

2022 Denver Building Code, including the 2022 Denver Energy Code.[4]  *Id.* at 13, ¶ 30.

The Energy Code now includes Sections C403.2.4 and C404.10, each of which restricts

or bans the use of certain natural gas appliances.  *Id.* at 14, ¶¶ 33-35.

On November 24, 2021, Denver enacted Denver Ordinance No. 21-1310, which

amended Chapter 10 of the Revised Municipal Code to require the Energy Code to

restrict certain uses of gas appliances in commercial and multifamily buildings.  *Id.* at

---

[2] For the purposes of this order, the Court will refer to plaintiffs and Sierra Club collectively as the "parties" because, although defendant Denver is a party to the litigation, it has not joined Sierra Club's motion to dismiss.

[3] The facts below are taken from plaintiffs' complaint, Docket No. 1, and are presumed to be true, unless otherwise noted, for purposes of ruling on Sierra Club's motion to dismiss.

[4] The complaint and the briefing use the terms "Energy Code" and "Building and Fire Code" somewhat interchangeably.  The Energy Code is a component of the Building and Fire Code.  *See* City and County of Denver, *2025 Denver Building Code* at 8 (available at https://www.denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/Community-Planning-and-Development/Building-Codes-Policies-and-Guides#section-1).  The Court will use the term "Energy Code" in the rest of the order.

12, ¶ 22.[5]  The Revised Municipal Code directs that electrification-related amendments be made to the Energy Code by 2023, with additional amendments required by January 1, 2025, and January 1, 2027.  *Id.*, ¶ 24.  Specifically, Revised Municipal Code Section 10-20(d) requires that the Energy Code be amended by January 1, 2025 to implement several electrification requirements that substantially limit or restrict the use of gas appliances in commercial and multifamily buildings.  *Id.* at 12-13, ¶ 25.  Revised Municipal Code Section 10-20(e) requires that the Energy Code be amended by January 1, 2027 to implement several additional electrification requirements that further limit the use of natural gas appliances, including a significant limitation on the replacement of gas-fired boilers.  *Id.* at 13, ¶ 28.

Plaintiffs allege that gas appliance laws regulate industrial and consumer appliances and are preempted by the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422.  *Id.* at 1, 25-26, ¶¶ 1, 79-84.  Plaintiffs' complaint brings a single claim, entitled "Federal Preemption by the Energy Policy and Conservation Act," in which they challenge Section 10-20 of the Revised Municipal Code and Sections C403.2.4 and C404.10 of the Energy Code.  Docket No. 1 at 25-26, ¶¶ 78-85.  Plaintiffs ask the Court to permanently enjoin Denver from enforcing or attempting to enforce Section 10-20 of the Revised Municipal Code and Sections C403.2.4 and C404.10 of the Energy Code and to prohibit Denver from maintaining these provisions as part of the Revised Municipal Code and the Energy Code.  *Id.* at 26-27, ¶ 87.  Plaintiffs also ask

---

[5] The complaint does not list the exact date of enactment, but the Court includes the date here for the sake of clarity.  *See* Denver, Colo., Ordinance No. 21-1310 (2021).

the Court to issue a declaratory judgment stating that the challenged provisions are preempted by federal law and are therefore void and unenforceable.  *Id.* at 27, ¶ 88.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then

4

plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

"To obtain dismissal at the Rule 12(b)(6) stage based on the statute of limitations, the allegations on the face of the complaint surrounding the date of accrual must 'make clear that the right sued upon has been extinguished.'" *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (citation omitted).

## III. ANALYSIS

Plaintiffs' complaint challenges three sets of legal provisions that are part of Denver's natural gas appliance laws. Docket No. 1 at 26-27, ¶¶ 87-88. The first set of standards (the "2023 standards") were added to the Energy Code, Sections C403.2.4 and C404.10, on January 9, 2023. *Id.* at 13, ¶¶ 30-31. The second set of standards ("the 2025 standards") is contained in Denver's Revised Municipal Code, Section 10.20(d), enacted on November 24, 2021. *See* Denver, Colo., Ordinance No. 21-1310 (2021) (enacting Revised Muni. Code 10.20(d)). Section 10.20(d) directs that the Energy Code be amended to include the 2025 standards by January 1, 2025. Revised Muni. Code § 10.20(d). The Energy Code has not yet been amended to include these standards.[6] The third set of standards ("the 2027 standards") is contained in Denver's

---

[6] Sierra Club's reply, filed on July 16, 2025, states that, "Denver has not revised the Energy Code to include these standards. . . . When Denver adopted a new Energy Code last month, it decided not to follow Ordinance 21-1310's direction to add the 2025 standards to the Code by January 1, 2025 – Denver did not implement any of the 2025 provisions in Municipal Code § 10-20(d)." Docket No. 41 at 2. While this information is not in the complaint, the Court will consider it because a court may consider intervening

Revised Municipal Code, Section 10.20(e), enacted on November 24, 2021.  *See*

Denver, Colo., Ordinance No. 21-1310 (2021) (enacting Revised Muni. Code 10.20(e)).

Section 10.20(e) directs that the Energy Code be amended to include these standards

by January 1, 2027.  Revised Muni. Code § 10.20(e)  The Energy Code has not been

amended to include these standards.

Sierra Club argues that plaintiffs' challenges to all three standards should be

rejected as barred by the statute of limitations.  Docket No. 16 at 10-15.  Sierra Club

also argues that the challenges to the 2025 and 2027 standards should be dismissed as

not ripe for decision.  *Id.* at 4-10.  Sierra Club concedes that the challenge to the 2023

standards, if found to be timely, would be ripe.  *Id.* at 10.  Based on these arguments,

Sierra Club moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  *Id.* at 4.[7]

The Court finds that the challenges to the 2025 and 2027 standards are not ripe

and will dismiss those portions of the complaint.  The Court finds that the challenge to

the 2023 standards is timely and may proceed.

### A.  Ripeness of the Challenges to the 2025 and 2027 Standards

Sierra Club argues that plaintiffs' challenges to the 2025 and 2027 standards are

not ripe because those standards have not yet been incorporated into the Energy Code.

*Id.* at 4.

---

events as part of a ripeness analysis.  *See Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1238 n.2 (10th Cir. 2004); *Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 n.4 (2d Cir.1989) ("Intervening events relevant to the ripeness inquiry should be considered and may be determinative.").

[7] "Prudential ripeness is properly analyzed under Rule 12(b)(6) rather than Rule 12(b)(1) because it does not implicate subject matter jurisdiction."  *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021) (citing *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 n.4 (10th Cir. 2017)).

The ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149 (1967)). The ripeness doctrine draws on both Article III limitations and on prudential reasons for refusing jurisdiction. *Id.* at 808 (citing *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57 n.18 (1993)). Here, Sierra Club's argument is based only on prudential considerations. Docket No. 16 at 4-5.

The prudential ripeness analysis evaluates "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017) (quoting *Abbott Labs*, 387 U.S. at 149).

### 1.  Fitness of the Issue for Consideration

The fitness inquiry considers "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Salt Lake Trib. Publ'g Co., LLC v. Mgmt. Plan., Inc.*, 454 F.3d 1128, 1140 (10th Cir. 2006) (citation omitted). Courts generally consider three factors for this analysis: 1) whether the issue is a purely legal one, 2) whether further factual development would significantly advance the court's ability to deal with the legal issue presented, and 3) whether the action in dispute is final. *Zinke*, 871 F.3d at 1141.

The parties agree that no further factual development is necessary. Docket No. 16 at 8; Docket No. 39 at 3.  The parties also agree that the issue presented is a purely

7

legal one.  Docket No. 16 at 8; Docket No. 39 at 3.  The parties do, however, dispute both the finality of the decision at issue and the significance of any lack of finality. *Compare* Docket No. 16 at 5-8, *with* Docket No. 39 at 3-4.

Sierra Club argues that the 2025 and 2027 standards are not final.  Docket No. 16 at 5-8.  Sierra Club explains that Sections 10.20(d) and (e), enacted on November 24, 2021, describe the standards and direct that those standards become part of the Energy Code by January 1, 2025 and January 1, 2027, respectively.  *Id.* at 6.  Thus, Sierra Club asserts, another intervening action – passing legislation to enter the standards into the Energy Code – is required before the standards become final.  *Id.* Sierra Club notes that, in the past, there have been changes between the standards originally listed in a municipal code and the standards ultimately enacted in the Energy Code.[8]  *Id.* at 6-8.  Sierra Club argues, given that incorporation of the standards into the Energy Code relies on uncertain or contingent future events, such as future legislation, the issue is not ripe for decision.  *Id.*

Plaintiffs respond that any contingencies that exist are relevant only if waiting for those contingencies to occur would aid in the Court's resolution of the issue.  Docket No. 39 at 4.  Plaintiffs argue that the kind of modifications that Sierra Club provides as examples of changes between initial and final legislation would not matter here, because any form of the regulation contemplated by Sections 10.20(d) and (e) would violate EPCA.  *Id.*  Plaintiffs also assert that, even if the standards at issue here are not

---

[8] Sierra Club does not explain why information about prior legislative actions, which is not referenced in the complaint, may be considered by the Court in ruling on a motion to dismiss.  Plaintiffs did not, however, object to Sierra Club referencing this information and, in any event, the Court's conclusion does not rely on this information.

8

final, no one factor is dispositive in the ripeness analysis, and thus a lack of finality does not automatically render the challenge unripe.  *Id.*  Moreover, plaintiffs argue, courts have held that challenges involving purely legal issues, such as the one here, are "presumptively reviewable."  *Id.* at 3.

Courts take a pragmatic approach to the finality factor of the fitness inquiry. *Farrell-Cooper Min. Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1235 (10th Cir. 2013).  An action is final when it marks "the consummation of the agency's decisionmaking process and is one by which rights or obligations have been determined, or from which legal consequences will flow."  *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotations omitted)).  In *Southern Utah Wilderness Alliance*, which involved issues regarding oil leases, the Tenth Circuit noted that the issuance of a permit typically constituted a final agency action since it represented an "irreversible and irretrievable commitment of public resources."  *Id.* at 1159.  In *Farrell-Cooper*, the Tenth Circuit held that there was a lack of finality in an agency action when that action was subject to an ongoing administrative review.  *Farrell-Cooper*, 728 F.3d at 1236.  In both cases, the Tenth Circuit held that the lack of final action rendered the plaintiffs' claims unripe.  *See Southern Utah Wilderness Alliance*, 707 F.3d at 1160-61; *Farrell-Cooper*, 728 F.3d at 1238.

In a case similar to the circumstances of this case, the D.C. Circuit held that a challenge to a regulation that had been enacted by one agency but that required subsequent action by another agency before becoming enforceable was not ripe.  *See Atl. States Legal Found. v. E.P.A.*, 325 F.3d 281, 284 (D.C. Cir. 2003).  In *Atlantic*

*States*, the EPA issued regulations that would not take effect unless the New York State Department of Environmental Conservation adopted the regulations after public notice and comment.  *Id.* at 282.  The court indicated that, because the New York agency could, after the notice and comment period, potentially modify the regulations, the action at issue may not be final.  *Id.* at 285.

As in *Atlantic States*, the present case involves a government promulgating a standard which, before it becomes enforceable, requires subsequent government action.  Although Section 10.20 describes the 2025 and 2027 standards, the code also explains that a subsequent step must take place to enact the standards.  *See*, *e.g.*, Revised Muni. Code § 10.20(d) ("No later than January 1, 2025, the Denver Building and Fire Code shall be amended to implement the following electrification requirements").  The Court finds the reasoning of *Atlantic States* persuasive and finds the 2025 and 2027 standards do not represent a final action.  A subsequent law must be passed before the standards become an enforceable part of the Energy Code, and there is no reason that the standards could not be modified before being placed into the Energy Code.  Nothing about this situation is "irreversible and irretrievable."  *Cf. S. Utah Wilderness All.*, 707 F.3d at 1159.  In fact, as Sierra Club explains in its reply filed on July 16, 2025, Denver has not passed any law placing the 2025 standards into the Energy Code, despite the January 1, 2025 deadline, found in Revised Municipal Code Section 10.20(d), for enacting the 2025 standards.  Docket No. 41 at 2.  The Court thus finds that the action at issue here is not final.

Although no one factor is dispositive in the fitness inquiry, *see Nw. Pipeline Corp. v. F.E.R.C.*, 986 F.2d 1330, 1334 (10th Cir. 1993), the Court finds that the lack of a final

action weighs heavily in favor of the challenges not being fit for review.  The Court finds that to rule on a standard that Denver has not yet made enforceable would entangle the Court in an abstract disagreement and would interfere with the deliberations of a government body that has not yet made a formalized decision.  *See Zinke*, 871 F.3d at 1141.

The Court also disagrees with plaintiffs' argument that, because the case involves a purely legal issue and does not need further factual development, it is "presumptively reviewable."  *See* Docket No. 39 at 3.  "The notion that disputes which turn on purely legal questions are always ripe for judicial review is a myth." *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1061 (10th Cir. 2017) (Matheson, J., concurring) (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995)).  "Federal courts cannot – and should not – spend their scarce resources in what amounts to shadow boxing.  Thus, if a plaintiff's claim, though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe."  *Id. (citation omitted)*.

The cases cited by plaintiffs for the proposition that their claim is presumptively reviewable, *see* Docket No. 39 at 3, entail distinguishable circumstances.  Both of those cases involved regulations that were final and enforceable at the time of the challenge. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1278-79 (D.C. Cir. 2005) (holding that there was nothing "tentative or interlocutory" about the permits at issue in the case); *see also United States v. Sup. Ct. of New Mexico*, 980 F. Supp. 2d 1334, 1336 (D.N.M. 2013) (addressing an enacted rule governing attorney

11

conduct in New Mexico).  In those cases, the courts held that there was no need to wait for the rule to be applied before considering its validity.  *Nat'l Ass'n of Home* Builders, 417 F.3d at 1282; *Sup. Ct. of New Mexico*, 980 F. Supp. 2d at 1341.  In the present case, the 2025 and 2027 standards found in Sections 10.20(d) and (e) are not final and enforceable, as evidenced by the fact that the code merely states what the standards are and contemplates a future action to implement the standards.  To postpone review here would not be merely waiting for application or enforcement of the standards; it would be waiting to see whether these standards become final laws.

The Court therefore finds that the issue of the validity of the 2025 and 2027 standards found in Revised Municipal Code 10.20 are not fit for review.

### *2. Hardship to the Parties from Withholding Consideration*

The hardship inquiry considers "whether withholding review would create adverse effects of a strictly legal kind to the party seeking judicial review."  *Zinke*, 871 F.3d at 1142 (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 809) (internal quotations omitted).  The relevant hardship is that which would befall the parties if a court does not decide the case.  *Id.* at 1143 (citing *Skull Valley Band of Goshute Indians*, 376 F.3d at 1238).  In other words, the question is whether the parties face a "direct and immediate dilemma" if a court withholds review.  *Id.* (citation omitted).  In the context of challenging government actions, a party seeking review suffers adverse effects if, without judicial review, it would need to comply with the challenged regulation.  *Id.*

On the other hand, legal provisions that "do not command anyone to do anything or to refrain from doing anything; . . . do not grant, withhold, or modify any formal legal license, power, or authority; . . . do not subject anyone to any civil or criminal liability; [and] . . . create no legal rights or obligations" are not considered "adverse

effects." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). "[M]ere uncertainty as to the validity of a legal rule" also does not qualify as a hardship under this analysis. *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811. To hold otherwise, the Supreme Court has explained, would overwhelm the courts with "requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved." *Id.*

Sierra Club argues that plaintiffs will not suffer any hardship if the Court withholds review because the 2025 and 2027 standards do not impose any legal requirements or obligations on the plaintiffs. Docket No. 16 at 8. Sierra Club also asserts that the 2025 and 2027 standards do not require plaintiffs to take any action in anticipation of the 2025 and 2027 standards. *Id.* Plaintiffs respond by listing several harms that the members of the plaintiffs' organizations will face in the future if the standards take effect, characterizing these future harms as hanging over plaintiffs as a "veritable Sword of Damocles." Docket No. 39 at 5. Plaintiffs argue that operating a business requires considerable advance planning and that they need clarification now on the legality of the standards. *Id.* at 6.

The Court finds that plaintiffs do not face significant hardship. The 2025 and 2027 standards are not presently enforceable against plaintiffs, so the lack of a ruling would not leave plaintiffs with no choice but to comply with the regulations. *See Zinke*, 871 F.3d at 1142; *Ohio Forestry Ass'n*, 523 U.S. at 733. Plaintiffs may have to factor the possibility of these standards into their business planning, but that alone is not a sufficient hardship. *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 811.

*Pacific Gas & Electric Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190, 201 (1983) ("*PG&E*"), which plaintiffs cite, does not support plaintiffs' view
that they are entitled to a ruling now in order to make planning decisions. *See* Docket
No. 39 at 5. *PG&E* involved a challenge by electrical utility companies to a California
law regulating the certification of nuclear power plants. 461 U.S. at 197-98. The
Supreme Court held that part of the challenge was ripe. *Id.* at 200-02. The Court
explained that, if it withheld ruling on the challenged provision, the utility providers would
have to invest millions of dollars and as much as 12-14 years of time before they could
reach the point of finding out whether the state agency defendant would certify the
project for operation. *Id.* at 201 & 201 n.13. The present case is distinguishable in
important ways. First, unlike in *PG&E*, there is no law presently in effect governing
plaintiffs and their operations. Second, unlike in *PG&E*, plaintiffs do not have to make
investments now that may go to waste later. Even if Denver were to implement the
2025 and 2027 standards without modification from Sections 10.20(d) and (e), the
standards apply only to buildings built and appliances installed after the enactment of
the regulation. *See* Revised Muni. Code §§ 10.20(d), (e). The Court therefore finds
*PG&E* inapplicable. Rather, the Court finds that *Nat'l Park Hosp. Ass'n.*, which held that
legal uncertainties impacting business planning did not constitute a hardship, provides
better guidance.

 Plaintiffs are not on a "collision course" with the standards. In *Roe No. 2 v.
Ogden*, 253 F.3d 1125 (10th Cir. 2001), law students challenged a requirement,
imposed by the state bar association, that prospective attorneys disclose substance
abuse issues. *Id.* at 1227-28. The defendant in that case argued that plaintiffs did not

face hardship because there was no guarantee that plaintiffs would graduate from law school and pass the bar exam, and the disputed application questions would not become an issue until both of those conditions had been met. *Id.* at 1231. The Tenth Circuit held that these contingencies did not defeat ripeness, especially given the fact that the questions had a substantial impact on the students' long-term plans. *Id.* at 1232. *Roe No. 2*, however, involved a law that was in effect at the time of the challenge. *Id.* at 1231. The Tenth Circuit explained that deferring a ruling would require the students to "jump through a series of hoops, the last of which [they are] certain to find obstructed by a brick wall." *Id.* (citation omitted). In the present case, there is no "brick wall" currently waiting for plaintiffs. The 2025 and 2027 standards are not currently in effect, and there is no assurance that they will take effect.

Having found that both the fitness and hardship inquiries weigh against a finding of ripeness, the Court finds that the challenges to the 2025 and 2027 standards are not ripe. The Court will therefore grant the part of Sierra Club's motion to dismiss that seeks to dismiss these portions of the complaint.

### B. Timeliness of the Challenge to the 2023 Standards

The parties dispute the statute of limitations that should apply to plaintiffs' EPCA claim. The parties agree that the relevant EPCA provisions do not contain a statute of limitations. Docket No. 16 at 11; Docket No. 39 at 7-8. When a statute does not contain a statute of limitations, a court does not typically presume that no limitation applies; instead, the court's task is to "borrow the most suitable statute or other rule of timeliness from some other source." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). State law is generally the "lender of first resort," supplying the period of limitation in the absence of a federal provision. *North Star Steel Co. v. Thomas*, 515

U.S. 29, 34 (1995).  In that borrowing exercise, a court looks for the state statute "most closely analogous" to the federal act at issue.  *Id.* (citations omitted).  This approach, known as the "state-borrowing doctrine," is "longstanding," *id.* at 35, and, "[r]ooted as it is in the expectations of Congress . . . may not be lightly abandoned."  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 356 (1991).  Given the longstanding nature of the doctrine, courts are justified in assuming that, when Congress passes a law without a statute of limitations, Congress "intends by silence that we borrow state law."  *North Star Steel*, 515 U.S. at 35 (quoting *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 147 (1987)).

There are two exceptions to the practice of borrowing a statute of limitations that are relevant here.  The first exception comes from 28 U.S.C. § 1658(a), which states that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."  The Supreme Court has held that this catchall statute of limitations applies to any claim made possible by a post-1990 enactment.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Under the second exception, which is a "closely circumscribed . . . [and] narrow exception to the general rule" of borrowing from state statutes, a court should not borrow from state law when doing so would "stymie the policies underlying the federal cause of action."  *North Star Steel*, 515 U.S. at 34 (citation omitted).  This exception applies only when 1) a rule from elsewhere in federal law provides a closer analogy than available state statutes, and 2) the "federal policies at stake and the practicalities of litigation make [the federal rule] a

significantly more appropriate vehicle for interstitial lawmaking." *Id.* at 35 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989)).

The parties discuss the potential applicability of three different statutes of limitations. Plaintiffs argue that the four-year limit from 28 U.S.C. § 1658(a) should apply. Docket No. 39 at 7-11. In the alternative, plaintiffs recommend Colorado's two-year limit that applies to federal statutes without a limitations period. *Id.* at 11. Sierra Club argues that a 60-day limit found in a judicial review provision of EPCA should apply. Docket No. 16 at 10-13.

Denver added the 2023 standards to the Energy Code on January 9, 2023. Docket No. 1 at 13, ¶¶ 30-31.[9] Plaintiffs filed suit on July 3, 2024. *See generally id.* If either the four- or two-year limits apply, then the suit is timely. If the 60-day limit applies, it is not timely. The Court will consider each of the three options.

### *1. 60-Day Limitation from 42 U.S.C. § 6306(b)(1)*

Sierra Club argues for the 60-day limit found at 42 U.S.C. § 6306(b)(1). Docket No. 16 at 10-13. The relevant portion of that section states that:

> Any person who will be adversely affected by a rule prescribed under section 6293, 6294, or 6295 of this title may, at any time within 60 days after the date on

---

[9] The motion to dismiss and Sierra Club's reply raise the question of whether plaintiffs' challenge to the 2023 standards is only a challenge to the legislation placing the standards into the Energy Code or if it is also challenging the November 24, 2021 ordinance that first described the standards and amended the Revised Municipal Code. Docket No. 16 at 14 n.5; Docket No. 41 at 10. The Court understands the complaint to challenge these standards only as they exist in the Energy Code, not as they exist in the November 2021 ordinance. Thus, the Court's analysis on the statute of limitations will treat plaintiffs' complaint as challenging only the 2023 standards as they presently exist in Sections C403.2.4 and C404.10 of the Energy Code. Moreover, any challenge to the November 2021 legislation would be, for the reasons discussed in the ripeness analysis earlier in this order, inappropriate. For the same reasons, the Court also rejects Sierra Club's argument that, because the ordinance describing consumer appliance regulations was first enacted in 2021, plaintiffs' challenge to those provisions is untimely under the two-year limitations period. *See* Docket No. 41 at 10.

which such rule is prescribed, file a petition with the United States court of appeals for the circuit in which such person resides or has his principal place of business, for judicial review of such rule.

42 U.S.C. § 6306(b)(1).  Sierra Club argues that, because EPCA encompasses "all of the substantive and legal issues relevant to this case," the Court should apply a limitation contained within EPCA.  Docket No. 16 at 12.  Sierra Club notes that an appellate court reviewing a petition under Section 6306(b)(1) is authorized to grant the same kind of declaratory and injunctive relief that a district court is authorized to grant when it reviews a case, as the Court does here, pursuant to Section 6306(c)(1).  *Id.* at 13.  Thus, Sierra Club argues that applying the 60-day limitation to a district court's review of a local government's action under Section 6306(c)(1) would reflect the "balance struck by the same Congress in limiting similar and related protections."  *Id.*

The Court finds that the 60-day limitation should not apply to this case.  For the exception to the state borrowing presumption to apply, the Court must find that 1) a rule from elsewhere in federal law provides a closer analogy than available state statutes, and 2) the "federal policies at stake and the practicalities of litigation make [the federal rule] a significantly more appropriate vehicle for interstitial lawmaking."  *North Star Steel*, 515 U.S. at 35.

First, Section 6306(b)(1) is not analogous to Section 6306(c)(1).  The procedural posture contemplated by Section 6306(b)(1) is different from the one contemplated by Section 6306(c)(1).  Section 6306(b)(1) applies to actions filed directly with a circuit court of appeals after an agency rulemaking has taken place.  Before that rulemaking takes place, a potentially aggrieved party would have had the opportunity to participate in the notice-and-comment process.  *See* 42 U.S.C. § 6306(a)(1) (providing for notice-

18

and-comment rulemaking for EPCA-based rules).  Section 6306(c)(1), on the other

hand, provides aggrieved parties with the opportunity to seek a determination as to

whether a state or local government is complying with EPCA.  42 U.S.C. § 6306(c)(1)

("Jurisdiction is vested in the Federal district courts of the United States over actions

brought by-- (1) any adversely affected person to determine whether a State or local

government is complying with the requirements of this part.").  That provision is not, by

its terms, limited only to actions in which the aggrieved party had a formal opportunity to

participate in a rulemaking or lawmaking process.  Given the differences between the

two postures, the Court finds that these two provisions are not "similar and related"

provisions meant to balance the same interests.  *See Lampf, Pleva, Lipkind, Prupis &*

*Petigrow v. Gilbertson*, 501 U.S. 350, 359 (1991) (citing *DelCostello*, 462 U.S. at 169);

*cf. Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854-55 (8th Cir. 2000) (rejecting the

application of a statute of limitations from a judicial review mechanism based on the

different procedural postures between an appellate-style review of an agency decision

and a traditional civil action filed in federal district court).

Second, the Court finds that applying the 60-day limit would not appropriately

protect the "federal policies at stake."  *North Star Steel*, 515 U.S. at 35.  In this analysis,

courts consider what the federal interest at stake is and whether the application of a

longer or shorter statute of limitations would better serve that federal interest.  *See, e.g.*,

*United Gov't Sec. Officers of Am. Int'l Union v. Am. Eagle Protective Serv. Corp.*, 956

F.3d 1242, 1245 (10th Cir. 2020) (holding that, because there was a strong federal

interest in the speedy resolution of labor disputes, a shorter statute of limitations should

apply to a law governing certain labor grievances).

There is a federal interest in ensuring that state and local governments do not enact laws that are contrary to EPCA, which preempts state and local regulation in that area. *See, e.g.*, S. Rep. No. 100-6, at 2 (1987) ("The purpose of [the consumer appliance provision of EPCA] is to reduce the Nation's consumption of energy and to reduce the regulatory and economic burdens on the appliance manufacturing industry through the establishment of national energy conservation standards for major residential appliances."). A 60-day limitation period would place a tight limit on the time period in which a private party could challenge a regulation, thus limiting the opportunity to vindicate the federal interest in uniform appliance standards. *Cf. DelCostello*, 462 U.S. at 165-66 (noting the difficulties a plaintiff would have in bringing a suit within 90 days and, based in part on those difficulties, declining to borrow a 90-day limitations period). As such, the Court finds that a 60-day window would not appropriately protect the federal interest at stake. The Court will decline to borrow the 60-day limitation period from 42 U.S.C. § 6306(b)(1).

### 2. Four-Year Limitation from 28 U.S.C. § 1658(a)

Plaintiffs argue that the Court should apply the four-year limit from 28 U.S.C. § 1658(a). Docket No. 39 at 7-11. Section 1658(a) applies to any claim made possible by a post-1990 Congressional enactment. *Jones*, 541 U.S. at 382. Sierra Club argues that Section 1658 is inapplicable to plaintiffs' complaint because the EPCA provisions upon which plaintiffs base their case were enacted in 1987. Docket No. 16 at 12 n.4. As plaintiffs explain, however, plaintiffs challenge the 2023 standards regarding both their regulation of industrial appliances and their regulation of consumer appliances. Docket No. 39 at 7. Although EPCA's consumer appliance provisions were enacted in 1987, the statute's industrial appliance provisions were enacted in 1992. *See* Pub. L.

20

No. 100-12; 101 Stat. 103 (Mar. 17, 1987) (consumer appliances); *see* Pub. L. 102-486,

106 Stat. 2776 (1992) (industrial appliances).  Plaintiffs argue that Section 1658(a)

applies, at the very least, to the portion of its complaint challenging the regulation of

industrial appliances.  Docket No. 39 at 7.  Plaintiffs maintain that, given that the

challenges to the industrial and the consumer regulations are "extraordinarily similar,"

the Court should apply the four-year provision to both parts of plaintiffs' challenge.  *Id.* at

8.

   Sierra Club replies that plaintiffs' challenge to the industrial appliance laws based

on the 1992 EPCA amendments should not be governed by the four-year statute of

limitations.  Docket No. 41 at 7.  Sierra Club points to 42 U.S.C. § 6306(b)(5), which

states that "[t]he procedures applicable under this part" shall not be considered to be

"modified," "affected," or "superseded" by any other law unless the law "specifically

amends" or specifically refers to "this part."  *Id.*  Sierra Club asserts that the phrase "this

part" includes both the consumer and the industrial preemption provisions in EPCA.  *Id.*

Sierra Club then argues that the phrase "procedures applicable" found in 42 U.S.C.

§ 6306(b)(5) therefore includes the procedures for establishing statutes of limitations

since that provision is within the same subsection as 42 U.S.C. § 6306(b)(1).  *Id.*  As a

result, Sierra Club argues that the 60-day limitations period should apply.  *Id.*

   For the reasons the Court has explained above, it finds that the 60-day limitation

is not appropriate here.  The Court finds that the portion of the complaint challenging the

industrial regulations in the 2023 standards is timely based on the four-year limitation

period from 28 U.S.C. § 1658(a) because that part of the claim is made possible by a

post-1990 amendment to EPCA.  *See Jones*, 541 U.S. at 382.  The Court will, however,

decline to follow plaintiffs' suggestion that the Court extend the four-year limitation to the portion of the complaint that relies on the 1987 amendments to EPCA to challenge the consumer appliance regulations.  The Court finds that both the plain language of 28 U.S.C. § 1658 and the holding of *Jones* appear to draw a bright line between causes of action based on whether they rely on a Congressional enactment before or after December 1, 1990.  *See* 541 U.S. at 381-82.  Plaintiffs acknowledge a "dearth of authority on this issue," citing only a single law review article in support of their position. *See* Docket No. 39 at 8.  Based on the absence of support for plaintiffs' position, the Court will not depart from the longstanding presumption of the state-borrowing doctrine. *Cf. North Star Steel*, 515 U.S. at 35.

### 3.  Two-Year Limitation from Colo. Rev. Stat. §§ 13-80-102(1)(g), (h)

Plaintiffs argue that, if the Court does not apply the four-year limitation to the entirety of its complaint, the Court should apply a two-year statute of limitations from Colorado law.  Docket No. 39 at 11.  The state law provides, in relevant part, that:

> The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, must be commenced within two years after the cause of action accrues . . . (g) All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute; (h) All actions against any public or governmental entity or any employee of a public or governmental entity.

Colo. Rev. Stat. § 13-80-102(1)(g), (h).  Plaintiffs make two arguments in favor of the state limitations period.  Docket No. 39 at 11.  First, plaintiffs argue that, as a state statute of limitations, Section 13-80-102 benefits from the general preference for borrowing from state law.  *Id.*  Second, plaintiffs argue that the state statute is appropriate given that, by its language, it applies to the kind of action at issue here: a suit against a governmental entity and a suit in which the federal law provides no period

of limitation.  *Id.*  In another part of their response, plaintiffs concede that any state

limitations period is a "poor fit at best" given the federal interests at issue in a suit

seeking to enforce the supremacy of federal law.  *Id.* at 10.

Sierra Club argues that the two-year limitation from state law should not apply

given that the state law does not in any way take into account the specific legal and

policy issues addressed by EPCA.  Docket No. 16 at 12-13; Docket No. 41 at 9.  In

Sierra Club's view, the only provision that appropriately reflects these considerations is

EPCA's 60-day judicial review limit.  *See* Docket No. 16 at 13.  The Court, however, has

already considered and rejected that option.

Despite both parties' reservations about the two-year limitations period, the Court

finds that this is the best limitation period to apply.  State law is generally the "lender of

first resort" for borrowing statutes of limitations.  *North Star Steel*, 515 U.S. at 34.  The

presumption of borrowing from state law applies in all but "narrow" exceptions where 1)

a rule from elsewhere in federal law provides a closer analogy than available state

statutes, and 2) the "federal policies at stake and the practicalities of litigation make [the

federal rule] a significantly more appropriate vehicle for interstitial lawmaking."  *Id.* at 34-

35 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989)).  Neither the

Court nor the parties have identified an alternative source of law that is both a closer

analogy than available state statutes and that is a significantly more appropriate vehicle

for protecting the federal policies at stake.  *Id.*[10]  Moreover, the relevant state law

---

[10] In *Trawinski v. United Techs. Carrier Corp.*, the district court applied a five-year
limitation from 28 U.S.C. § 2462 to an EPCA provision because the plaintiffs were
seeking a civil penalty, and that statute addressed suits seeking a civil penalty.  *See*
201 F. Supp. 2d 1168, 1171 (N.D. Ala. 2002), *aff'd sub nom. Trawinski v. United Techs.*,
313 F.3d 1295 (11th Cir. 2002).  Plaintiffs here are not seeking a civil penalty, *see*

contemplates two circumstances found in this case, namely, the relevant federal statute contains no limitations period and the plaintiff is suing a governmental entity. *See* Colo. Rev. Stat. § 13-80-102(1)(g), (h) (providing a two-year limitation for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll actions against any public or governmental entity"). The Court will therefore follow the presumption of the state-borrowing doctrine and apply a two-year limitation period to the portion of plaintiffs' claim that challenges the part of the 2023 standards regulating consumer appliances. Since those regulations took effect on January 9, 2023, and plaintiffs filed suit on July 3, 2024, Docket No. 1, plaintiffs' claim is timely. The Court will therefore deny the portion of Sierra Club's motion to dismiss that seeks to dismiss as time-barred the challenge to the 2023 standards.

## IV. CONCLUSION

It is therefore

**ORDERED** that the Proposed Motion to Dismiss by Applicant for Intervention Sierra Club [Docket No. 16] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that the portion of plaintiffs' claim, Docket No. 1, challenging the 2025 and 2027 standards contained in Revised Municipal Code 10.20 is **dismissed without prejudice**.

DATED September 16, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

Docket No. 1 at 26-27, ¶¶ 86-90, so the Court finds that 28 U.S.C. § 2462 is not relevant.