**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-01862-KAS

RESTAURANT LAW CENTER, et. al.,

Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, et al.

Defendants.

---

**DENVER'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1) and (6)**

---

The City and County of Denver ("Denver"), through undersigned counsel, hereby replies in support of its Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and in support states as follows:

## I.       Plaintiffs Have Not Established Standing

Denver has demonstrated that the conclusory factual allegations upon which Plaintiffs base standing are disproven by the facts regarding the manner in which the Denver Energy Code (also referred to herein as "Denver's Electrification Regulations") was applied during a sample time period. When, as here, a defendant challenges the "facts upon which subject matter jurisdiction depends" the defendant may submit matters outside the pleadings without converting the motion to dismiss to a motion for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Here, Denver has proven that the assumptions Plaintiffs make regarding the Energy Code are simply incorrect. That is, while Plaintiffs allege that the Energy Code bans

Covered Products which run on energy sources other than electricity and that they will, therefore, be required to install Covered Products that utilize electricity as the energy source, the facts gathered by Denver do not support these allegations. Approximately 50% of permit applicants during the relevant time period were able to continue to utilize Covered Products which utilize natural gas as an energy source. Under these circumstances, Plaintiffs' allegations regarding standing are insufficient because the facts simply do not support them; all of Plaintiffs' allegations of harm stem from their faulty, conclusory premise and they have provided no countervailing facts.

Standing, because it is a prerequisite to subject matter jurisdiction, can be raised at any time. *Bertels v. Farm Bureau Property & Casualty*, 123 F.4th 1068, 1074 (10th Cir. 2024). There is no error in Denver waiting until after Plaintiffs filed an Amended Complaint, ECF # 52, to move to dismiss on the issue of standing, especially considering that Denver asserted standing as a defense in its original Answer, ECF # 13, p. 4, and relies on information gathered months after the filing of Plaintiffs' original Complaint to support its motion. *See* ECF # 1 (complaint), ECF # 57-3 (data relied on).

While it is true that this lawsuit may progress if even one plaintiff has standing subject to the Court's discretion, this Court is not required to permit plaintiffs who have not established standing to remain as parties. *Thiebaut v. Colorado Springs Utilities*, 455 F.App'x. 795, 802 (10th Cir. 2011). Even so, no Plaintiff organization in this case has provided sufficient factual detail to support a finding of subject matter jurisdiction. Each Plaintiff's claim of standing rests on the faulty assertion that they will be required by the Energy Code to replace Covered Products with those which operate from electricity. Plaintiffs' allegations regarding the requirements of

the Energy Code are simply insufficient for standing purposes in light of Denver's factual

showing that the Energy Code does not operate as alleged by Plaintiffs or require them to replace

Covered Products running on natural gas with Covered Products which rely on electricity.

Plaintiffs have otherwise failed to provide any factual support which would grant them Article III

standing. Given this lack of standing, this Court has no jurisdiction to consider Plaintiffs' claims

and the First Amended Complaint must be dismissed. Fed. R. Civ. P. 12(b)(1).

## II. The Denver Electrification Regulations Are Not Preempted by EPCA.

Plaintiffs fail to address the plain text of EPCA. As explained in Denver's Motion, EPCA

establishes a comprehensive federal regime regulating energy conservation standards for

Covered Products. *See* ECF 57 at 10. "Energy conservation standards" are performance or design

standards that limit the "energy use" or "energy efficiency" of Covered Products. *See* 42 U.S.C.

§§ 6291(6), 6371(f)(1)(B). EPCA also preempts state or local regulations imposing different

energy conservation standards:  ". . . no State regulation concerning the energy efficiency, [or]

energy use . . . of such covered product shall be effective with respect to such product . . ." *See*

42 U.S.C. § 6297(c); *see also* 42 U.S.C. § 6316(b)(2)(A) (regarding industrial products).

EPCA preempts a state or local regulation that concerns the "energy use" or "energy

efficiency" of a Covered Product. The definition of "energy use" under EPCA is the "quantity of

energy directly consumed by [a Covered Product] at point of use, determined in accordance with

test procedures under [ Section 6293 or Section 6314]." *See* 42 U.S.C. §§ 6291(4), 6311(4).

Energy efficiency is the "ratio of the useful output of services from [a Covered Product] to the

energy use of such product, determined in accordance with test procedures under [ Section 6293

or Section 6314]." *See* 42 U.S.C. §§ 6291(5), 6311(3). And the test procedures used must be

designed to measure a Covered Product's energy consumption "during a representative average use cycle or period of use." *See* 42 U.S.C. § 6293(b)(3); *see also* 42 U.S.C. § 6314(a)(2).

Contrary to Plaintiffs' argument, "energy use" for purposes of EPCA preemption is not concerned with the location where a consumer uses a Covered Product. Rather, EPCA preempts a state or local regulation that attempts to impose a different energy conservation standard:  in other words EPCA preempts a regulation that requires a Covered Product to reduce the energy consumed or increase the energy efficiency "during a representative average use cycle or period of use." *See* 42 U.S.C. §§ 6291(4), 6293(b)(3); *see also* 42 § 6314(a)(2). The Denver Electrification Regulations do not impose an energy conservation standard on any Covered Product, as they do not impact the quantity of energy any Covered Appliance may use "during a representative average use cycle of period of use."

Plaintiffs attempt to broaden the scope of EPCA preemption through a glossing over of EPCA's definition of "energy use," and a misplaced reliance on *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). Additionally, Plaintiffs attempt to undermine Denver's argument by discussing EPCA's exception to preemption through building codes and its waiver provision. None of those arguments, however, establish that the Denver Energy Regulations impose energy conservation standards on Covered Products.

### A.    The plain text of EPCA shows that the Denver Electrification Regulations are not preempted by EPCA.

Plaintiffs argue that EPCA's preemption provision is aimed at regulations concerning the quantity of energy a Covered Product uses at the location where a Covered Product is actually used, i.e. its point of use, by focusing on the word "quantity" and the phrase "point of use" in the definition of "energy use". ECF 59 at 9-10.

4

Plaintiffs, however, completely gloss over a key aspect of the definition of "energy use" in their restatement of the definition. *Id.* Energy use is a measurement "determined in accordance with test procedures under [42 U.S.C §§ 6293, 6314]." *See* 42 U.S.C §§ 6291(4), 6311(4). And the test procedures used must be designed to measure a Covered Product's energy consumption "during a representative average use cycle or period of use." *See* 42 U.S.C. § 6293(b)(3); *see also* 42 U.S.C. § 6314(a)(2) ("during a representative average use cycle" for industrial products). When looking at the plain text of EPCA, "'energy use' is a fixed value, determined using administratively prescribed testing procedures, *see* 10 C.F.R. § 429.13, that represents the amount of energy a product consumes under typical conditions." *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, No. 23-CV-11292 (RA), 2025 WL 843619, at *4 (S.D.N.Y. Mar. 18, 2025); *see also Berkeley*, 89 F.4th at 1121 (9th Cir. 2024) ((Friedland, J., dissenting from denial of rehearing en banc) (stating that energy use "is a fixed number that measures the efficiency of an appliance as manufactured.")). Plaintiffs simply ignore the test procedures aspect of the definition of "energy use" as to address the test procedures would undercut their textual argument regarding the scope of EPCA preemption.

Additionally, "point of use" as used in the definition of "energy use" cannot mean "the place where or time when a product or service is used." ECF 59 at 10, citing Cambridge English Dictionary Online; *Berkeley*, 89 F.4[th] at 1101. To determine otherwise would render a key component of the definition of "energy use" meaningless, namely that it is measured according to test procedures during a representative average use cycle or period of use. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts must "give effect, if possible, to every clause and word of a statute."); *see also Berkeley*, 89 F.4[th] at 1123 (Friedland, J., dissenting from denial of

hearing en banc) (stating that the term "point of use" in the definition of "energy use" was not meant to protect "the end-user's ability to use installed covered products at their intended final destinations."). As stated above, "energy use" is a fixed value that does not change based on where a Covered Product is located, or who is using the Covered Product.

Because "energy use" is a fixed value, its statutory definition is not dependent on the amount of energy that is actually used by a consumer. Only a regulation that changes that fixed value of "energy use," required when a Covered Product is manufactured, would concern the "energy use" of a Covered Product. *See Ass'n of Contracting Plumbers*, 2025 WL 843619, at *6 (stating a New York law was not concerned with "energy use" or "energy efficiency" because it did "not draw any distinction between products based on their energy efficiency or energy use as manufactured").

The Denver Electrification Regulations do not concern the energy use or efficiency of any Covered Product because they do not impose any energy conservation standard. *See* ECF 57, Exhibits A, B, D. And since the Denver Energy Regulations do not change any energy conservation standard, they also do not reduce the energy use of any Covered Product to zero, contrary to Plaintiffs' assertion. ECF 59 at 10, 15. Since the plain text of EPCA shows that it does not preempt the Denver Energy Regulations, the Court need not look any further regarding the scope of EPCA preemption. *See Commonwealth Of Puerto Rico v. Franklin California Tax-free Tr.*, 579 U.S. 115, 125 (2016) (deciding questions of statutory interpretation need go no further when the statute's language is plain).

Plaintiffs also cite to *Berkeley* as support for their argument that the preemption provision of EPCA encompasses the Denver Electrification Regulations. ECF 59 at 10-11. A

panel of the Ninth Circuit concluded that "EPCA preempts regulations . . . that relate to 'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are used." *See Berkeley,* 89 F.4th at 1101. In other words, according to the panel, EPCA is concerned with a consumer's ability to use a Covered Product at its "intended final destinations." *Id.* at 1102. The panel in *Berkeley*, however, based this conclusion on an incomplete analysis of the definition of "energy use:"  namely it completely failed to include the phrase "determined in accordance with test procedures under section 6298 of this title" when making its conclusion. *Id.* at 1101. Due to this failure and other statutory flaws, *Berkeley* was incorrectly decided and should not be followed. *See, Id.* at 1119-20 (Friedland, J., dissenting from denial of hearing en banc) (urging future courts interpreting the scope of EPCA preemption not to follow the panel's mistakes in misinterpreting EPCA's key terms). And two courts have declined to adopt a broad scope of EPCA preemption citing to the flaws in the *Berkeley* panel's reasoning, and Judge Friedland's dissent. *See*, *Association of Contracting Plumbers*, 2025 WL 843619, at 4–5 (declining to adopt the Ninth Circuit's interpretation of "energy use" and "point of use" in dismissing a claim alleging that a City of New York law prohibiting the use of fossil fuels in newly constructed residential building was preempted by EPCA."); *Mulhern Gas Co., Inc. v. Mosley*, 798 F. Supp. 3d 304, 313-14, 325-26 (N.D.N.Y. 2025) (declining to adopt the reasoning of the panel in *Berkeley* and instead adopting the analysis in *Berkeley's* dissenting opinion and in *Ass'n of Contracting Plumbers* in deciding that a New York state law that ultimately prohibits the installation of fossil-fuel equipment in certain new buildings was not preempted by EPCA).

Like the two courts above, and the dissent in *Berkeley*, this Court should decline to adopt

7

the Ninth Circuit's interpretation of "energy use" and "point of use" in determining that the

Denver Electrification Regulations are not preempted by EPCA, and thus dismiss Plaintiffs' First

Amended Complaint for failing to state a claim.

### B.     Plaintiffs misconstrue EPCA's legislative history.

Plaintiffs state that the purpose and history of EPCA demonstrate that the Denver

Electrification Regulations are just the type of regulation Congress intended to preempt. ECF 59

at 12. And if the Denver Electrification Regulations are not preempted, then manufacturers will

be subject to a patchwork of regulatory regimes across the nation—something the legislative

history shows EPCA was concerned with. *Id.* The Denver Electrification Regulations, however,

are not the type of regulations Congress intended to preempt.

One of the central tenants of an amendment to EPCA, the National Appliance Energy

Conservation Act of 1987, was to "legislate express energy conservation standards for eleven

consumer products." *See* H.R. Rep. No. 100-11, at 19 (1987). And the Act "continue[d] the basic

concept of preempting State energy efficiency standards." *Id.* at 24. The Denver Electrification

Regulations do not establish any energy conservation standard in a Covered Product, and instead,

with numerous exceptions, prohibit the use of fossil-fuel in certain appliances. ECF 57 at 3-4,

Exhibits B, C, D. As such, the legislative history of EPCA shows that Congress did not intend to

preempt regulations like the Denver Electrification Regulations. *See* Berkeley, 89 F.4th at 1120

(Friedland, J., dissenting from denial of hearing en banc) ("The history of the relevant provisions

of . . . EPCA shows that, from the beginning, they were technical provisions with a narrow scope

of preemption.").

8

    C.       **EPCA's building code exception and waiver provisions do not support preemption.**

Plaintiffs argue that EPCA is concerned with Covered Products beyond the manufacturing stage because of EPCA's inclusion of the building code exception to preemption: "An exception to preemption for building codes would be unnecessary if, as Denver says, EPCA exclusively concerned itself with the manufacturing process." ECF 59 at 13. The building code exception says nothing about the preemption of regulations, like the Denver Electrification Regulations, that do not impose energy conservation standards. EPCA generally preempts a state or local regulation that imposes energy conservation standards.  42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2)(A). EPCA contains an exception to preemption, however, where a building code may include Covered Products that exceed federal energy conservation standards if the building code satisfies certain conditions. *See Bldg. Indus. Ass'n v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1147-48 (9th Cir. 2012); 42 U.S.C. § 6297(f)(3); 42 U.S.C. § 6316(b)(2)(B). Plaintiffs completely miss the mark on this argument. EPCA specifically allows exceptions to EPCA preemption for building codes. *See,* 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2)(A). Therefore if a manufacturer wanted to provide Covered Products that exceed federal energy conservation standards and that are listed in a building code, the manufacturer would naturally address this at the manufacturing stage. The Denver Electrification Regulations impose no energy conservation standards, and that is why they are not preempted.

Additionally, Plaintiffs argue that EPCA's preemption-waiver provision goes further than the manufacturing stage because it "prohibits DOE from waiving preemption if the 'State regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." ECF 59 at 13; citing 42 U.S.C. § 6297(d)(3); 42 U.S.C.

§ 6316(b)(2)(D).  However, the language cited by Plaintiffs regarding prohibitions on waivers of preemption mirror the language regarding the setting of federal energy conservation standards. See 42 U.S.C. § 6295(o)(4). EPCA seeks to ensure that state and local governments cannot impose energy conservation standards that makes Covered Products uncompetitive in the domestic appliance market, just as it does with the establishment of energy conservation standards for the federal government.  42 U.S.C. §§ 6297(d)(3)-(4). None of these provisions say anything about laws like the Denver Electrification Regulations that do not impose an energy conservation standard. See ECF 57, Exhibits B, C, D.

**CONCLUSION**

For the foregoing reasons, Denver respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice.

Respectfully submitted this February, 2026.

By: *s/ Adam C. Hernandez*
Michele A. Horn
Adam C. Hernandez
Assistant City Attorneys
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
michele.horn@denvergov.org
adam.hernandez2@denvergov.org
*Attorneys for Defendant the City and County of Denver*

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, I caused a true and correct copy of the foregoing **DENVER'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)** to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Megan H. Berge
Scott Novak
Baker Botts, LLP
700 K St NW
Washington, DC  20001
megan.berge@bakerbotts.com
scott.novak@bakerbotts.com
*Attorneys for Plaintiffs*

Angelo Amador
2055 L St NW
Washington, DC  20036
aamador@restaurant.org
*Attorney for Restaurant Law Center*

*s/ Shannon Egan*
Shannon Egan, Paralegal
City and County of Denver
201 West Colfax Avenue,
Dept. 1207
Denver, Colorado  80202-5332

11